Rapallo, J.
 

 This action was brought by the husband to have the marriage declared void by reason of a previous marriage of the wife. The order appealed from was made at the final hearing of the action, on the report of the referee, and directed the plaintiff to pay certain sums to the attorney and counsel for the defendant for counsel fees and expenses theretofore incurred in her defence, which was successful.
 

 
 *136
 
 It is conceded that there is no statute in terms authorizing the order, and that, if sustained, it must rest upon the incidental powers formerly vested in the Court of Chancery, in cases of this description, and to which the Supreme Court has succeeded.
 

 The 35th section of art. 2, title 1, chap. 8, part 2 of the Revised Statutes (2 R. S., 144) provides, that suits to annul marriage shall be by bill, and shall be conducted in the same manner as other suits prosecuted in courts of equity; and the court shall have the same power to award issues, to decree costs, and to enforce its decrees, as in other cases.
 

 Section 58, of article 5, of the same title (2 R. S., 148), which relates, however, only to the divorces authorized by articles 3 and 4, for causes arising subsequent to the marriage, provides, that in every such case the court may decree costs against either party.
 
 No
 
 statutory authority is, in express terms, conferred upon the court in any action for divorce or nullity, to award counsel fees or expenses on a final decree, unless they are embraced in the term costs, as applied to this class of cases.
 

 The only statutory authority to be found for requiring the husband to pay counsel fees incurred by the wife in any case of divorce, is that contained in section 58 (2 R. S., 148), which provides, that in every suit brought for a divorce or separation, the husband may be required to pay any sums necessary to enable the wife to carry on the suit during its pendency.
 

 This provision, it is apparent, is applicable only to cases where the wife is carrying on the suit, and the application is made during the pendency of the action. It is simply declaratory, and in accordance with the previously existing practice. (1 J. Oh., 110, id., 364; see revised notes.) It is also very properly restricted to cases where the wife admits the existence of a valid marriage and seeks a divorce or separation for subsequent misconduct of the husband. Where she denies the existence of the marriage, she cannot consistently claim that the defendant is under any obligation to provide her with means to carry on her suit against him.
 
 (Bartlett
 
 v.
 
 Bartlett,
 
 
 *137
 
 Clarke Ch. R., 460, 461;
 
 North
 
 v. North, 1 Barb. Ch., 243.)
 

 The statute, therefore, not only omits to provide for furnishing the wife with the means of defence in any case of divorce, and for indemnity for counsel fees and expenses of a successful defence, but even for temporary alimony during the pendency of the suit. The only statutory provision, in respect to alimony being, that if a decree be obtained by the wife dissolving the marriage, the court may make a further order for a suitable allowance for her support; and that in suits for a separation brought by the wife, a decree for her support may be made. (2 R. S., 145, § 45, and 147, § 55.)
 

 Yet it has been the constant practice of the Court of Chancery, both before and since the Revised Statutes, to make equitable provision for all these matters; and in so doing, it has been guided by the decisions of the ecclesiastical courts of England in similar cases.
 
 (Mix
 
 v.
 
 Mix,
 
 1 Johns. Ch., 110 ;
 
 Denton
 
 v.
 
 Denton,
 
 1 id., 364 ;
 
 Lewis
 
 v.
 
 Lewis,
 
 3 id., 519 ;
 
 Wood
 
 v.
 
 Wood,
 
 2 Paige, 114;
 
 North
 
 v.
 
 North,
 
 1 B. Ch., 244.)
 

 This has not been done upon the theory that the Court of Chancery of this State was vested with the jurisdiction of the ecclesiastical courts of England in matrimonial cases, or that (except in special cases hereafter referred to) it ever possessed any jurisdiction in cases of divorce other than that which was conferred by our own statutes ; but upon the ground of the general equitable jurisdiction of the court, and also that when our statutes did confer jurisdiction upon the Court of Chancery, in those actions for divorce which by the English law are solely cognizable in the ecclesiastical courts, the grant of that jurisdiction carried with it by implication the incidental powers which were indispensable to its proper exercise, and not in conflict with our own statutory regulations on the same subject.
 
 (Perry
 
 v.
 
 Perry,
 
 2 Paige, 504, 506 ;
 
 Devanbagh
 
 v.
 
 Devanbagh,
 
 5 Paige, 556.) In some of the other States a different doctrine prevails. In Vermont it is held that the court, in matters of divorce, acts as a court of law, and can only grant alimony in the cases provided by the
 
 *138
 
 statute. (10 Vt., 505; 19 Vt., 603.) In Rhode Island, Massachusetts and North Carolina it is also held that the power to grant alimony is confined to the eases mentioned in the statutes of those States respectively. (2 R. I., 64; 2 Gray, 285; 2 Dev.
 
 &
 
 Batt., 377.) And in some of those cases it was held, that the court had no power to order the husband to furnish the wife with the means either of carrying on or defending a suit for divorce. In this State a different ' rule has always prevailed. Jurisdiction in cases of divorce was conferred here, not as a special and limited jurisdiction granted to a common-law court, but it was granted to a chancery court; and the court, in administering it, has always called to its aid its own equity powers and the decisions of the ecclesiastical courts of England in like eases.
 

 The Court of Chancery of this State has, in some cases, entertained bills to declare the nullity of marriages, independently of any statute conferring jurisdiction. But these were cases in which the marriage was sought to be declared void, for some cause for which chancery had power to cancel or avoid all contracts, such as lunacy or fraud, and it was held that the marriage contract was not excepted from the operation of this general jurisdiction; and that if it was not exercised by the Court of Chancery in England in matrimonial cases, it was not for want of jurisdiction, but because other tribunals existed there, competent to afford full relief.
 

 But in all other cases it must be conceded that the jurisdiction of the Court of Chancery of this State, in actions for divorce, either on thb ground of nullity or for cause arising subsequent to the marriage, is founded wholly upon the statutes.
 
 (Perry
 
 v.
 
 Perry,
 
 2 Paige, 506;
 
 Burtis
 
 v. Burtis, Hopk. Ch., 556.)
 

 Prior to 1787, there was no tribunal in this State authorized to' grant a divorce, and the only remedy of aggrieved individuals in matrimonal cases was by application to the legislature for relief. In 1787, an act was passed reciting that it was more advisable for the legislature to make general provision for such cases, than to afford relief to individuals
 
 *139
 
 without a proper trial, and therefore, conferring jurisdiction upon the Court of Chancery to decree divorces in cases of adultery. This was the only cause of divorce until the year 1813, when divorces, on the application of the wife, on the ground of cruel treatment was authorized, and in 1824, the husband was enabled to sue for a divorce on the same ground.
 

 In 1820, in
 
 Wightman
 
 v.
 
 Wightman
 
 (4 J. Ch., 343), Chancellor Kent decreed the nullity of a marriage on the ground of lunacy of one of the parties at the time of its alleged solemnization; and in 1825, in
 
 Ferlat
 
 v.
 
 Gojon
 
 (Hopkins Ch. It., 478), Chancellor Sanford decreed a marriage void for fraud. Both of these cases were based upon the general jurisdiction of the Court of Chancery in cases of lunacy and fraud, and not upon the jurisdiction of ecclesiastical courts. Accordingly, in
 
 Burtis
 
 v.
 
 Burtis
 
 (Hopkins Ch., 557), decided also in 1825, Chancellor Sanford decided that the Court of Chancery had no jurisdiction to annul a marriage on the ground of impotence, holding that the statutes of this State, before referred to, are founded upon the supposition that the causes of divorce which they define, were not causes of divorce by any pre-existing law in force in this State, and that they could not be regarded as an adoption of the English ecclesiastical law on the subject of divorces, but as conferring power only in the cases which they specify.
 

 By the Revised Statutes, the powers of the Court of Chancery on the subject of divorces were enlarged. Article 2 of title 1, chapter 8, part 3, entitled,
 
 “
 
 of divorces on the ground of the nullity of the marriage contract,” enumerates five causes for which, if they existed at the time of the marriage, the chancellor may declare void the marriage contract, viz.: 1st. Either of the parties not having obtained the age of legal consent. 2d. Either of them have a former husband or wife living. 3d. One of them being an idiot or lunatic. 4th. Consent having been obtained by fraud. 5th. Physical incapacity of either party.
 

 Some of the causes here enumerated were causes which
 
 *140
 
 rendered the marriage void at common-law, and over which the Court of Chancery had already assumed jurisdiction. Others were causes not previously, cognizable in chancery.
 

 The section was framed, as appears by the revisers’ notes, in view of the decisions in
 
 Wightman
 
 v.
 
 Wightman
 
 (4 J. Ch., 343), and
 
 Burtis
 
 v.
 
 Burtis
 
 (Hopkins, 557), and the revisers refer to the latter case as establishing that the whole jurisdiction of the Court of Chancery, in relation to marriage (except when the contract is void on the same grounds on which other contracts may be avoided), is conferred and limited by statute. And they criticise as extra-judicial the remarks of Chancellor Kent in
 
 Wightman
 
 v. Wightman, as to the power of the Court of Chancery to annul incestuous marriages, and refer to the fact that, up to the time of the revision of the statutes, there was no law of this State defining or prohibiting incestuous marriages.
 

 From this review it will be seen that, in some actions for nullity, the jurisdiction of chancery was derived wholly from the statute; yet, in others, it existed independently of the statute, and as a part of the original jurisdiction of the court.
 

 Assuming that this case belongs to the former class, although this is not clear (see 2 Paige, 504), the marriage being void at common-law, if the plaintiff’s allegations were true, the question is, whether, in the absence of any statutory enactment, the court had power, on the final hearing, to award counsel fees and expenses of the defence.
 

 As has been seen, there is no statutory provision expressly authorizing any allowance of counsel fees, expenses or alimony to the wife when defendant, in any description of action for divorce; the only provisions being for allowances to enable her to carry on a suit, and for permanent alimony when she obtains a decree, and the several provisions allowing costs to be awarded. An action for divorce on the ground of nullity is, therefore, governed in these respects by the same principles as all other actions for divorce, unless, indeed, the marriage should be declared void
 
 ab i/nitio.
 
 In view of the previous decisions of our Court of Chancery, it cannot be
 
 *141
 
 supposed that, at the time of the adoption of the Bevised Statutes, the Legislature could have intended, while conferring power upon the court to entertain actions for divorce on the ground of nullity in behalf of the husband, to withhold from the wife the means of defence which were afforded her by the practice of the English courts, in which jurisdiction in such cases was exercised, and which our Court of Chancery had, without any statutory authority, been in the habit of affording in other actions of divorce. And it must be assumed that, when they vested the Court of Chancery with the power to exercise that jurisdiction, they considered that it would be vested by implication with those equitable powers to guard the rights of wives, which had always been regarded as incidents of such jurisdiction, and were customarily exercised by the courts engaged in its administration. The jurisdiction, even of the ecclesiastical courts, to decree alimony, seems to have been exercised, not as an original jurisdiction, but as an incident of their right to decree divorces.
 
 (Ball
 
 v.
 
 Montgomery, 2
 
 Ves., 195; Clancy on Married Women, b. 5, chap. 9, 549, 550; 1 Fonbl. Eq., b. 1, chap.
 
 2,
 
 § 6, note 2.) It must be remembered that this jurisdiction was conferred, not upon a common-law court, but upon the Court of Chancery, and in view of its general powers to adjust remedies and annex conditions to the exercise of rights and the redress of injuries. (Story Eq., §§
 
 27,
 
 28.) Equity has not original jurisdiction to enforce the obligation of the husband to provide necessaries for the wife; and, when abandoned by her husband, if she does not resort to an action for divorce, she must rely upon the right, which the common-law gives her, to obtain necessaries on his credit. But, when the husband comes into a court of equity for relief against Ins wife, he submits himself to its jurisdiction, and may be eompelléd to fulfill his own equitable obligations in respect to the subject-matter in controversy.
 

 Thus, when the husband is seeking in equity to obtain possession of the property of his wife, though at law the property would be his, the court lays hold of the occasion to compel the husband to make equitable provision for the wife.
 
 *142
 
 (Story, Eq., §§ 1404, 1405.) Much stronger reasons would seem to exist for affording protection to the wife, when the husband is seeking to set aside the marriage itself. It cannot be doubted that the means of defence in such a case are necessaries. So long as the marriage is not ascertained to be invalid, the court, having jurisdiction of the parties and the controversy, must be deemed to have power to compel the husband to furnish these means, whether its jurisdiction over the prescribed case be original or purely of statutory creation. The cases cited by the respondent on the argument are cases where the allowances of counsel fees and alimony were made pending the suit to enable the wife to defend.
 
 (North
 
 v.
 
 North,
 
 1 B. Ch., 241, and cases cited.) And they were imposed as conditions of allowing the husband to prosecute his suit. They differ in that respect from this, case, the allowances here having been made at the termination of the action, and for past services and expenses. But the marriage having been found to be valid, and the expenses having been necessarily incurred by the wife in consequence of the action of her husband, the obligation rests upon him to pay them, and they can be awarded in the action brought, by him, upon the same principle as in other cases of divorce. Similar orders were made on the final hearing in the cases of
 
 Germond
 
 v.
 
 Germond
 
 (1 Paige, 83);
 
 Graves
 
 v.
 
 Graves
 
 (2 Paige, 62); and
 
 Kendall
 
 v.
 
 Kendall
 
 (1 B. Ch., 610). In the first of these cases the wife was defendant. In
 
 Kendall
 
 v.
 
 Kendall,
 
 the chancellor remarks that it was not the intention of the legislature, by 2 B. S., 148, § 58, which declares that costs may be decreed against either party, that the allowance to the wife for costs should be confined to the mere taxable costs between party and party; but that the court should determine whether any and what allowance, should be made for extra expenses and counsel fees beyond the taxable costs.
 

 The amounts awarded in this case are, in the opinion of some of the members of the court, large ; but in view of the character of the litigation and extent of the services it cannot
 
 *143
 
 be said that they are so excessive as to be beyond the scope of a legal discretion.
 

 The order should be affirmed with costs.
 

 All concur, except Grover, J., dissenting.
 

 Order affirmed.