By the Court.—Sedgwick, J.
Thelearned judge on the trial dismissed the complaint under exception, and directed the exceptions of the case to "be heard in the first instance at General Term.
The witnesses for plaintiff testified in effect to the following facts: The plaintiff was a boy thirteen years old. He wrongfully went upon the platform of a car in a freight train of the defendants. At that time there was no servant of the defendant there. The train started and was in full motion when a man called by the witnesses a brakeman, having a brakeman’s cap and jacket, appeared on the top of a car and ordered' the plaintiff to get off the train, but the plaintiff did not. The brakeman came down to the platform and again told the plaintiff to get off or he said he would kick him off. About this time the plaintiff went from the platform and was hanging by his hands from an iron bar fixed in the side of the car. The plaintiff cried and told the brakeman he was too small to get off, for God’s sake to let him stay on until they got to the next station. The brakeman again told him to get off or he *224 would kick him off. The plaintiff’s feet w.ere then touching the. wheels of the car still in motion, and as they touched, the wheels threw them about. The brakeman lifted his foot to kick the plaintiff. The plaintiff jumped, and as he fell, one of his legs went under the wheel, which crushed it. A necessary amputation of the leg followed.
The first point that attracts attention is whether the plaintiff had given enough testimony as to any employment by the defendant of the man called a brakeman, of a kind that would have justified the jury in finding that it was within the scope of the brakeman’s duty to remove, in a proper manner, persons wrongfully on the platform.
I think there can be no doubt that when the witnesses say the man was a brakeman and had a brakeman’s cap and jacket, they give some proof that the defendant employed him as such on that train. The term brakeman is in common use, with a well-known meaning, and is used in our statutes without an accompanying definition, so that without specific testimony on the point, we can say what are the duties of a brakeman.
The train was owned by the defendant and was under their control. By law, their duty to the public was to provide it with all necessary agencies, among them engineer, conductor, and brakeman, for its management. The presumption is that there were such on this train, acting as the defendant’s agents and servants. The man moving around the cars with a brakeman’s cap on as described, was so doing in the presence of these agents and servants without' interference from them, and assuming in their presence to use some authority in the train. There was in this way, from the inherent character of the transaction, some evidence as against the defendant, that he was employed by the defendant to do some duty that had for one object the care of the property, cars, and their contents, if any, in the train.
*225 If we look on him as a hrakeman only, whose specific duty was to stand upon a platform and move the brakes upon order, that will put him in charge of his master’s property so far as to call on him to interfere tó prevent anything in his presence likely to cause damage, or, indeed, any unlawful trespass upon it; to make it his duty to preserve and protect the company’s property, it does not seem to be necessary to prove that such was ever stated to him to be his duty. That duty flows from his employment as a servant, who will be left as such in care of property. I think, therefore, that, as a brake- ■ man, the proof showed he was in charge of a part of the train, and bound to protect it from trespassers, and that his employer, the defendant, had imposed on him the duty to remove such from the train. Such a protection is necessary against injury to the car, or depredation upon property carried by the cars (Mali v. Lord, 36 N. Y. 385; Church v. Landers, 10 Wend. 79; Norris v. Kohler, 41 N. Y. 42 ; McIntyre v. N. Y. Central R. R. Co., 43 Barb. 532, and 37 N. Y. 287). On this point I think there was enough testimony to take the case to the jury.
The next point is, whether the testimony tended to show that the acts done by the brakeman towards the plaintiff were so done in the performance of a duty to remove trespassers; that they were acts for which the defendant, as his master, was liable.
Cosgrove v. Ogden (49 N. Y. 258), gives the last statement the rule on this subject. If a master employs a servant to do a specified thing, and at the same time orders him to do it in a particular manner, that there may be no injury to third parties, and the servant proceeds to do the thing, but disregarding his orders as to the manner, does it in such a way that, by his negligence, injury is caused, the master is liable. Should the servant, intentionally, for some purpose of his'own, while he was doing the thing, cause an injury, the mas *226 ter would not be responsible, because it would not be done in Ms business, but would be a departure therefrom by the servant to effect a purpose of his own.
In this-case, did the brakeman, to accomplish a purpose of his own, abandon or leave on one side the duty he owed to his master, when he kicked at the boy ? or, again, was the brakeman in the performance of any duty that existed at the time to attempt to remove the plaintiff from the car ?
In Jackson v. 2d Av. R. R. Co. (47 N. Y. 377), a passenger having refused to pay the fare, the conductor rightfully proceeded to eject him from the car ; but in the course of this he used a force he had no right to exert, in striking him a blow in the face. The Court of Appeals considered that it was a question for the jury, whether the blow was given wilfully and in malice, or because the conductor mistakenly deemed the blow necessary to effect the purpose which the performance of his duty called on him to accomplish. We have to notice here that the circumstances called on the conductor to perform a justifiable act within the scope of his authority, and the blow was a part of the performance as matter of fact.
But in the present case the cars were in motion. It was unlawful to eject any trespasser so long as the train was, as was the fact in this case, moving at a rate which rendered the ejection dangerous to life and limb (Isaacs v. 3d Av. R. R., 47 N. Y. 137; Sanford v. The 8th Av. R. R. Co., 33 N. Y 344). Therefore, although the facts create a presumption that the defendant had authorized the brakeman to remove intruders, tMs authority is not presumed to cover a case where it would be unlawful to remove a trespasser. This I understand to be, in fact, the case of Isaacs v. 3d Av. R. R. Co. (Supra). The opinion in that case does not deny that the conductor, by reason of his general powers, is presumed to have authority *227 from the company to eject a passenger in a proper contingency, hnt that such authority is not presumed to extend to a case in which it would be unlawful for, the company to direct expressly the conductor to eject a passenger. The first reason given in the case for the decision is that the car was in motion, and for no cause could the plaintiff have been thrust out into the street against her will while the car was in motion; that the law forbade it; the defendant could not have lawfully done it, and, therefore, no authority could be implied in the conductor to do it.
In the present case we have a like reason for saying, that the presumption is that the authority to eject a trespasser in a proper exigency, will not be presumed to have been given to turn the plaintiff out of the car while it was in motion. The brakeman, therefore, was not in the performance of a duty to the master, but was engaged in an undertaking for which he was solely responsible.
Again, in Isaacs v. 3d Av. R. R. Co., the court said the act-was wanton, reckless, and committed with great force, and was a wilful trespass, and not a natural or necessary consequence of anything which the defendant had committed to be done for it to the conductor. As in the present case, all the force used or threatened to be used by the brakeman was wilful, violent, reckless, and constituted a trespass of the same character upon the plaintiff; and.was not, as in Sanford v. 8th Av. R. R. Co., but a part of an act which otherwise was lawful ; we must, under Isaacs v. 3d Av. R R. Co. and Cosgrove v. Ogden, consider that it was a personal tort on the part of the brakeman, for which the defendant was not liable. Therefore the complaint was properly dismissed.
Judgment should be ordered for defendant, with costs.
Baeboub, Ch. J., and Freedman", J., concurred.