JENNIE E. ERKENBRACH, Appellant, *v.* GEORGE A. ERKENBRACH, Respondent.

The courts in this State have no common-law jurisdiction over the subject of divorce; their authority is confined altogether to the exercise of such express and incidental powers as are conferred by statute.

Under the Revised Statutes, after the entry of a final decree establishing a cause of action in favor of the wife, in an action for a limited divorce, the court had no power to order an additional allowance for her support, an order, however, may be made after a final decree in such an action, making provision for the care, custody and education of the children of the marriage. (2 R. S. 147, § 59.)

There is no distinction in this respect between an action for limited and one for absolute divorce.

The history of the legislation in this State on the subject of divorce given.

(Argued June 19, 1884; decided October 7, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, which modified and affirmed as modified an order of Special Term denying a motion on the part of plaintiff, to confirm the report of a referee, appointed to take proofs, and report the same with his opinion as to the amount proper to be allowed plaintiff for her support, and for the care and education of her children.

This was an action under the Revised Statutes for a limited divorce. Plaintiff obtained a decree in 1869, which gave her the custody of the children of the marriage, but no provision was made therein for her support, or for the care of the children.

In 1879 she presented a petition to the court averring a change in defendant's circumstances, also concealment as to his means when the decree was granted. A referee was appointed to take proof and report as above stated. The motion to confirm this report was denied on the ground " that the court has no power to make any allowance whatever now to the plaintiff by way of alimony." The General Term affirmed the order so far as it denied to plaintiff any allowance for her own support, but reversed it so far as it denied an allowance for the benefit of the children, and directed a reference " to ascertain and report a suitable and proper allowance for the past and future custody, care and education of said children since the decree of separation herein."

*Joseph A. Welch* for appellant. If there be no express authority in the statutes for granting this application for maintenance, then the power and duty of the court will be determined by the obligations of the marital relations in the light, so far as may be needed, of the doctrines and practice of the English courts exercising jurisdiction in similar cases. (*Barrere* v. *Barrere*, 4 Johns. Ch. 196 ; *Devanbagh* v. *Devanbagh*, 5 Paige, 556 ; *Griffin* v. *Griffin*, 47 N. Y. 134 ; *Brinkley* v. *Brinkley*, 50 id. 190, 200 ; *Collins* v. *Collins*, 80 id. 1, 12.) The obligation of the defendant to support his wife and children was not diminished by the sentence of separation. (2 Kent, 146–148 ; *Collins* v. *Collins*, 80 N. Y. 12 ; *Douglass* v. *Douglass*, 5 Hun, 142–3 ; *Atwater* v. *Atwater*, 53 Barb. 621 ; *Johnston* v. *Allen*, 39 How. Pr. 506 ; *Cromwell* v. *Benjamin*, 41 Barb. 558 ; *Blowers* v. *Sturtevant*, 4 Denio, 47 ; *Keller* v. *Phillips*, 39 N. Y. 351 ; *Hancock* v. *Merrick*, 10 Cush. 41 ; *Hunt* v. *Blaquiere*, 15 Bing. 550.) The practice of the ecclesiastical and later of the divorce courts of England has

uniformly been to receive and act upon applications, either to vary or to compel maintenance, at any time subsequent to a decree of separation. (*Covell* v. *Covell*, L. R., 2 P. Div. Cases, 411; *Westmeath* v. *Westmeath*, 3 Knapp, 42; *Neill* v. *Neill*, 4 Hagg. Eccl. 273; *Saunders* v. *Saunders*, 1 Sw. & Tr. 72; *Bradley* v. *Bradley*, L. R., 3 P. Div. 47; *Sidney* v. *Sidney*, H. of L., 36 L. J. [Prob. & Mat.] 72; *Harmar* v. *Harmar*, 32 L. J. [Prob. & Mat.] 118; *Louis* v. *Louis*, 35 id. 92; *Morrall* v. *Morrall*, 50 id. 62; Matrimonial Causes Act of 1857, § 22.) The act of 1813, which conferred jurisdiction over suits for separation, by so doing put the Court of Chancery in full possession of all the powers necessarily incident to that jurisdiction, which had been customarily exercised by the Ecclesiastical Courts in England, among which is that invoked in this proceeding. (R. L. 1813, chap. 102, §§ 10, 11; *Barrere* v. *Barrere*, 4 Johns. Ch. 196; *Devanbagh* v. *Devanbagh*, 5 Paige, 556; *Griffin* v. *Griffin*, 47 N. Y. 134; *Brinkley* v. *Brinkley*, 50 id. 190, 200; *Mehan* v. *Mehan*, 2 Barb. 377; *Holmes* v. *Holmes*, 4 id. 295.) The power thus conferred in 1813 has not been since taken away from the courts. (R. S., arts. 4, 5, §§ 50, 51, 52, 54, 55, 56; *Davis* v. *Davis*, 75 N. Y. 221.) The power over the custody of children, declared in the statute of 1815 (2 R. S., 147, § 59), not being one of the powers exercised in the Ecclesiastical Court, and hence not contained in the implied grant of 1813, the act of 1815 was thus supplementary and not restrictive. (Schouler on Husb. and Wife, § 550; Maxwell's Int. of Statutes, 105–110, 133–150; Hardcastle's Stat. Law, 52–54, 167–172; *Kidder* v. *Horrobin*, 27 N. Y. 159, 168; *Chamberlain* v. *West. T. Co.*, 44 id. 305; *Goodrich* v. *Russell*, 42 id. 184; *Bingham* v. *Supervisors*, 8 Minn. 441; *Heckman* v. *Pinckney*, 81 N. Y. 211, 215; *People* v. *Clews*, 77 id. 39; *Powers* v. *Shepard*, 48 id. 544; *Dexter* v. *L. P. R. Co.*, 16 Barb. 18; *Williams* v. *Potter*, 2 id. 316; *Cochrane* v. *Van Surley*, 20 Wend. 381.) The sentence of separation is not a termination of the action. (*Kamp* v. *Kamp*, 59 N. Y. 212, 219, 221; *Covell* v. *Covell*, L. R., 2 P. & D. 411.) The provisions of the act of 1813, as seen both there and in

the Revised Statutes, show the purpose of the legislature to have been to incorporate the entire system of equitable powers exercised in the Ecclesiastical Courts of England, in actions for separation, into our own body of jurisprudence. (R. L. 1813, chap. 102, § 11 ; 2 R. S. 147, § 54.)

*Joseph J. Marrin* for respondent. The courts of this State are not bound in divorce cases by the rules of the Ecclesiastical Court of England, but by the provisions of our statutes. (*Griffin* v. *Griffin*, 47 N. Y. 134.) No provision for support or maintenance can be made after the granting of the decree. (*Kamp* v. *Kamp*, 59 N. Y. 212.)

RUGER, Ch. J. Prior to the year 1787 the courts of this State had no jurisdiction of the subject of divorce, " and the only remedy of aggrieved individuals in matrimonial cases was by application to the Colonial governor and his council or to the legislature for relief." (*Burtis* v. *Burtis*, 1 Hopk. 557 ; *Griffin* v. *Griffin*, 47 N. Y. 138.)

In that year an act was passed authorizing the Court of Chancery to entertain proceedings, and when the fact was made to appear, to decree divorce for adultery. This was the only ground for divorce until 1813 when the legislature authorized decrees for separation from bed and board, upon the application of the wife for cruel and inhuman treatment and desertion ; and in 1824 the husband was also enabled to sue for divorce on the same grounds. Section 5 of the act of 1813 provided, in respect to actions for an absolute divorce, when the wife was complainant: " It shall be lawful for the Court of Chancery to make a further decree or order against the defendant, compelling him to provide for the maintenance of the children of the marriage," " and to provide a suitable allowance to the complainant for her support, as to the said court shall seem reasonable and just," and authorized the court to sequester the property of the husband and cause the proceeds of his " personal property, and the rents and profits of his real estate to be applied toward such maintenance and allow-

ance, or to such maintenance or allowance as to the said court shall from time to time seem just and reasonable." This was the first statutory authority for an allowance of alimony. Under this clause of the act it was said by the chancellor in *Miller* v. *Miller* (6 Johns. Ch. 91), providing for an allowance in a final decree, that "perhaps it may be in the power and in the discretion of the court to vary the allowance hereafter," "for the statute speaks of such maintenance or allowance as to the court shall 'from time to time' seem just and reasonable." Section 11 of the act provided, in reference to limited divorces, that the chancellor shall have authority, whether the court shall decree a separation from bed and board or not, to make such orders or decrees for the suitable support and maintenance of the wife and children, or any of them, by the husband, or out of his property, as the nature of the case and the circumstances of the parties render suitable and proper in the opinion of the chancellor.

It was further provided by that act that in such suit the defendant might require the complainant to give security for costs before he could be compelled to answer the bill.

By chapter 221, Laws of 1815, it was enacted that in any suit for divorce the chancellor was authorized "either before or at the final hearing of the case, or afterward, as occasion may require, to make orders, as between the parties for the custody, care and education of the children of the marriage, and upon sufficient cause shown thereafter to annul, vary or modify such order."

The Revised Statutes enlarged the grounds upon which the court was authorized to pronounce decrees of nullity, and included cases where, 1, either of the parties had not attained the age of legal consent; 2, either of them having a former husband or wife living; 3, one of them being an idiot or lunatic; 4, consent having been obtained by fraud; 5, physical incapacity of either party.

The existing laws on the subjects of divorce, separation and alimony were rearranged, and with the addition of some, and

the omission of other provisions, were re-enacted in the revision of the Statutes of 1828.

Section 5 of the act of 1813 became section 45 of chapter 8, part 2, title 1, article 3 of the Revised Statutes, and thereafter read as follows: " When the wife shall be complainant, and a decree dissolving the marriage be pronounced, the court may make a further decree or order against the defendant, compelling him to provide for the maintenance of the children of the marriage, and to provide such suitable allowance to the complainant for her support as the court shall deem just, having regard to the circumstances of the parties respectively." It will be observed that the clause in the act of 1813, authorizing the court to make such allowance as shall from time to time seem just and reasonable, is here omitted from the statute.

The effect of this change came under the consideration of this court in *Kamp* v. *Kamp* (59 N. Y. 219), where it was said by Judge GROVER: " It will be seen that section 45 confers power upon the court to make proper provision in the decree dissolving the marriage, for the maintenance of the children thereof, and also a suitable allowance to the wife, having regard to the circumstances of the parties. This provision is to be made by and constituted a part of the decree, and be based upon the then circumstances of the parties. The decree in this respect is not to be modified by subsequent changes in such circumstances," although this language is taken from a dissenting opinion, upon this question, it expressed the views of the whole court.

Provision for alimony in final decrees similar to those authorized in cases of absolute divorce, were enacted by the Revised Statutes to apply to cases for a limited divorce. Section 54 of article 4 of said act reads as follows : " Upon decreeing a separation in any such suit the court may make such further decree as the nature and circumstances of the case may require, and may make such order and decree for the suitable support and maintenance of the wife and her children, or any of them, by the husband or out of his property, as may appear just and

proper." Section 55, "Although a decree for separation from bed and board be not made, the court may make such order or decree for the support and maintenance of the wife and her children, or any of them, by the husband, or out of his property, as the nature of the case renders suitable and proper."

Notwithstanding the broad and comprehensive language used in section 55, this court held in *Davis* v. *Davis* (75 N. Y. 221), that no provision could be made for alimony in cases where the plaintiff did not succeed in maintaining by proof the charges of cruel and inhuman treatment. That in such cases the defendant was entitled to a dismissal of the bill, and it could not be retained to afford relief for any collateral purpose.

Section 59 of the Revised Statutes provides as follows : " In any suit brought by a married woman for a divorce, or for a separation from her husband, the court in which the same shall be pending may, during the pendency of the cause, or at its final hearing, or afterward, as occasion may require, make such order as between the parties, for the custody, care and education of the children of the marriage, as may seem necessary and proper, and may at any time thereafter annul, vary or modify such order." This section seems to be a re-enactment of the provisions of chapter 221 of the Laws of 1815, extending it also to actions for an absolute divorce, and was the only act in force when this action was commenced which authorized a court to modify or change the provisions of a final decree, except, in cases for separation, courts were empowered by statute to annul such decree upon the request and consent of the parties.

The authority of the court, to make the order for alimony asked for here, must, if it exists, be found in the provisions of the Revised Statutes, as all preceding statutes on the subject were repealed by chapter 21 of the Laws of 1828. That act repeals the act of 1815 by express reference to it, and the act of 1813 by its inclusion in the clause repealing " all statutes and parts of statutes consolidated and re-enacted in the Revised

Statutes, or repugnant to the provisions contained therein." (Subd. 549, § 1, Laws of 1829.)

The question presented by this appeal is whether a court has power, after the entry of a final decree in an action for a limited divorce, establishing a cause of action in favor of the wife, to order an additional allowance for her support.

The question is purely one of construction and depends entirely upon the effect which shall be given to the several statutory provisions relating to the subject. The courts in this State have no common-law jurisdiction over the subject of divorces, and their authority is confined altogether to the exercise of such express and incidental powers as are conferred by the statute. (Revisers' notes, vol.. 5 Statutes at Large, p. 399 ; 1 Hop. 557 ; *Griffin* v. *Griffin, supra ; Davis* v. *Davis, supra ; Kamp* v. *Kamp, supra.*) Previous to the revision of the statutes it was, however, held that the Court of Chancery had authority, by virtue of its general equity jurisdiction, to entertain suits to annul marriage contracts, upon the same grounds which authorized them to annul contracts generally. Under this authority the chancellor entertained an action to declare a marriage contract void on the ground of the lunacy of one of the parties at the time of making the contract. (*Wightman* v. *Wightman,* 4 Johns. Ch. 343.) Upon the same principle a marriage was declared void in *Ferlat* v. *Gojon* (Hopk. 478), on the ground that the consent of the complainant thereto was obtained by fraud and terror, and the marriage had never been consummated by cohabitation. Beyond this, however, the Court of Chancery refused to go, and held in *Burtis* v. *Burtis* (Hopk. 557), that it had no jurisdiction over an action to declare a marriage void upon the ground of the physical incapacity of the defendant. (*Perry* v. *Perry,* 2 Paige, 504 ; *Griffin* v. *Griffin, supra.*) It is also true that in the case last cited the court sanctioned an allowance of costs and fees to defendant's counsel over and beyond the taxable costs, although no statute expressly provided for such an allowance. The power to do so was held to be a necessary incident to the jurisdiction which the court had acquired over the parties and

the subject of the action, and pertained to the general powers vested in courts of equity, "to adjust remedies and annex conditions to the exercise of rights and the redress of injuries."

Except in the cases where the Court of Chancery entertained actions to annul a marriage contract upon the same grounds which avoided other contracts Judge RAPALLO says: "In all other cases it must be conceded that the jurisdiction of the Court of Chancery of this State in actions for divorce, either on the ground of nullity, or for cause arising subsequent to the marriage, is founded wholly upon the statutes."

But little aid can be derived from the decisions of the courts of other States construing statutes essentially different from our own, and this is especially true of the decisions of the Ecclesiastical Courts of England.

It was expressly held in the case of *Burtis* v. *Burtis* (*supra*) that the jurisdiction exercised by those courts in matrimonial cases, had never been conferred upon any court in this State. Chancellor SANFORD says: "Our statutes are clearly original regulations, intended to authorize divorces in cases in which no divorce could before be obtained." "To consider these statutes as an adoption of the English law of divorces would be a violent perversion of the language and intention of the legislature. Such a construction of these laws would in effect declare that statutes authorizing divorces in certain cases particularly specified, also authorize divorces in a multitude of other cases not specified."

The cases of *Bradley* v. *Bradley* (Law Rep., 3 Prob. & Div. 47) and *Covell* v. *Covell* (Law Rep., 2 Prob. & Div. 411) and other similar English cases cited by the appellant, not only depend upon the construction of the Matrimonial Causes Act of 20 and 21 Vict., which is essentially different from our statute, but the questions there involved were decided the other way in *Kamp* v. *Kamp*.

The practice of the English courts of allowing alimony after final decrees makes no distinction in actions for divorce, whether the relief sought be limited, or absolute, and would seem to

imply that, in respect to alimony, the actions were not distinguishable. (*Covell* v. *Covell, supra.*)

The question comes back to the interpretation of our own statute. No case has been cited in our courts where an application for an allowance for the support of the wife after final decree has been made, except in the case of *Kamp* v. *Kamp*, where the allowance was refused. That was a case of absolute divorce; but no distinction is seen to exist between such a case and one of limited divorce.

The statutes authorizing such an allowance in the final decree are similar in both cases, and the power of the court to make such order after final decree, is given and prescribed in the same language by the same section.

It is doubtless true that a distinction exists between these cases in respect to the common-law liability of the husband for necessaries furnished the wife; but it is not seen how this distinction can affect the interpretation of the statute.

It was said by Judge RAPALLO in *Griffin* v. *Griffin* (*supra*): "Equity has not original jurisdiction to enforce the obligation of the husband to provide necessaries for the wife, and when abandoned by her husband, if she does not resort to an action for divorce, she must rely upon the right which the common law gives her, to obtain necessaries on his credit."

A court of equity has no power to enforce this common-law liability by any independent proceeding, and if it is sought in connection with an action for separation, it must be obtained at the time and under the conditions prescribed by the statute. It was said by Judge ANDREWS in *Davis* v. *Davis* (*supra*), that "the general jurisdiction which appertains to the Supreme Court as a court of equity, to interfere for the protection of infants, and by virtue of which in a proper case, where the interests of the infants require it, they may be taken even from the custody of the father, and placed under the care of strangers, cannot be invoked to sustain the judgment in this case. In this statutory action the power of the court is to be sought in the statute itself, and only such judgment can be rendered as is authorized thereby." The provisions of the Revised

Statutes constitute a comprehensive and detailed scheme for the treatment of matrimonial and domestic differences, framed with great care to define the rights and liabilities of the respective parties and the power and duties of the courts, and cannot be departed from, without usurping an authority not granted by the statute. The statute carefully defines the various causes for which a divorce may be allowed, the relief which may be granted in such actions during the pendency thereof and by its final decree, and the cases in which the courts may make further orders. The legislature has assumed to legislate upon the subject which is involved in this appeal and has defined the purposes for which an order may be made by the courts after final decree.

By expressly authorizing an order to be made after judgment, providing only for the "care, custody and education of the children of the marriage" it has impliedly prohibited such an order for any other cause. The maxim of "*Expressio unius est exclusio alterius,*" has uniformly been applied to the construction of statutes in our decisions, and seems to govern this case.

The order made by the General Term, referring the petition back to a referee to ascertain and report a suitable and proper allowance for the care, custody and education of the children, was authorized by the statute, and should be affirmed. The care, custody and education of children naturally requires expenses to be incurred for the accomplishment of the objects contemplated by the statute, and provision for those expenses, among other things, was undoubtedly within the intention of the legislature in framing that provision. ·

The result reached in this case seems also to conform to the existing practice as provided for by sections 1766, 1769 and 1772 of the Code of Civil Procedure, and will make the practice in respect to this subject uniform, not only as to future, but also as to all existing decrees. ·

The order of the General Term should be affirmed.

All concur.

Order affirmed.