Jacobson *v.* Jacobson.

---

WARREN A. JACOBSON, JR., Respondent, *against* CARRIE M. JACOBSON, Appellant.

(Decided June 6th, 1887.)

On the trial before a referee of an action for absolute divorce, the plaintiff, after having introduced evidence which concerned a certain woman; endeavored to produce the attendance of defendant for the purpose of identification, but was unable to discover her residence, and her attorney declined to disclose it, and the court refused to compel him to make such disclosure. *Held,* that under such circumstances the court had power to order discontinuance of weekly alimony *pendente lite* unless defendant should consent to attend upon the trial for the purpose of identification.

APPEAL from an order of this court suspending payment of alimony *pendente lite.*

The action was brought for absolute divorce. Upon motion, there had been allowed to defendant a certain sum of

money for counsel fee and five dollars per week as alimony
*pendente lite.* Pending trial of the case before a referee,
plaintiff, after having introduced evidence concerning a cer-
tain woman, desired to have defendant appear in person at
the reference, so that the witnesses might say whether or
not she was the woman in question. The sole purpose for
which her attendance was sought was identification. It
appeared that plaintiff had endeavored to subpœna defend-
ant, but had been unable to do so, or to discover her resi-
dence. Defendant's attorney declined to disclose her
address, and the court refused to compel him to make
such disclosure. Upon these facts, an order was granted
discontinuing the alimony unless defendant should consent
to attend on the trial. From this order defendant appealed.

*Thomas Vickery*, for appellant.

*James W. McElhinney*, for respondent.

LARREMORE, Ch. J. — [After stating the facts as above.]
— We regard this order of the Special Term as a very just
and proper one under the circumstances. The general
rules with regard to alimony *ad interim* and counsel fee
are well stated in Mr. Bishop's work, as follows : "On an
adequate marriage, the wife's needs, the faculties of the
husband, and a *prima facie* cause of action or defense ap-
pearing, the court will, ordinarily, but not necessarily as of
course, grant the allowance ; proceeding herein upon the
judicial discretion, as prompted by all the facts and sur-
roundings. The *ad interim* alimony and money for the suit
expenses are given not as strict right in the wife, but of
sound discretion in the court. Yet the discretion is judicial,
not arbitrary. When exercised fairly and without abuse by
the trial court, it will not ordinarily be interfered with on
appeal " (Bishop Marr. & Div. 6th ed. vol. 2 §§ 405,
406).

The cases of *De Llamosas* v. *De Llamosas* (62 N. Y.
618) and *Collins* v. *Collins* (71 N. Y. 269) hold that

Jacobson *v.* Jacobson.

although a legal marriage is not denied, alimony *pendente lite* is not a matter of strict right, but the application therefor must be addressed to sound discretion. If therefore the court may, on a proper occasion, refuse to grant alimony, it seems reasonable to hold that its discretionary power is not exhausted by the original grant or refusal, but that it may, for good cause, discontinue or suspend alimony already allowed. As the matter rests in discretion, the court could certainly make the performance of a reasonable act on the part of a defendant a condition precedent to the allowance of alimony in the first instance. On precisely the same principle the court has power to make the performance of a reasonable act, the propriety of which appears during the progress of the suit, a condition of the further continuance of the alimony.

The act required of the defendant in the present case seems a perfectly reasonable one. If she is innocent of the charges brought against her, it is difficult to perceive how her defense can be compromised by her simple attendance for identification. On the other hand, it appears that plaintiff is seriously embarrassed in the conduct of his suit by the inability of his witnesses to say whether or not the person they refer to in their testimony is the defendant. A case is easily supposable where the only possible way of establishing the identity of a person sued with the person to whom the evidence relates would be by an actual inspection by the witnesses. In such a case the defendant, though guilty, might, by simply shunning observation, be able to prevent the plaintiff from obtaining a judgment and prolong the suit indefinitely for the purpose of continuing in the enjoyment of alimony.

It cannot be urged that the order appealed from violates the provisions of section 831 of the Code of Civil Procedure. It is there enacted that a husband or wife is not competent to testify against the other upon the trial of an action or the hearing upon the merits of a special proceeding founded upon an allegation of adultery, except to prove the marriage. The appearance of the defendant, if actually compelled,

would not make against the plaintiff, but, if anything, in his favor and against herself. But, aside from this, I do not think such section has any application to the subject. Under no legitimate use of language could a simple appearance for identification be held to be "testifying." The word "testify" comprehends an intelligent, active performance, in which a person, by words or writing or other comprehensible signs, communicates facts within his own mind to another. In merely being identified a person is as passive as an inanimate object.

Proceedings to compel attendance for identification are by no means unknown in the history of equity jurisprudence. In *Curtis* v. *Curtis* (5 Moore 252), a decree of confrontation had been issued for a wife to appear to be identified in an action against her for divorce, and the court refused to allow a defensive allegation on her part, on the ground that she was in contempt. Lord BROUGHAM used the following language : "It appears to us not merely the right of a party to object to the admission of this defensive allegation, but it is the right of the court. The court has a right to say that it will not allow the process issued out of the court to be treated with contempt. Mrs. Curtis' identity was material; it was upon her identity that the case was to be determined. She goes to a distant country with her paramour, and does not appear to the decree for confrontation. Under such circumstances, the learned judge was quite right in refusing to admit the defensive allegation on her behalf, when she refused to appear, and his decree must be affirmed."

The object of the decree of confrontation was to compel just what plaintiff is seeking in the present case — an appearance for identification. Of course, under our present Code of Procedure, no such technical process exists, but I see no reason why the court should not, by order similar to the one here involved, accomplish, as far as possible, the practical result of the ancient decree of confrontation.

The opinion of Judge RAPALLO in *Griffin* v. *Griffin* (47 N. Y. 134) contains a most interesting discussion of the

Jacobson *v.* Jacobson.

incidental powers of a court having equity jurisdiction, outside of the authority specially conferred by statute, in relation to the conduct of suits for divorce. It is there shown that, although the statute omits to provide for furnishing a wife with alimony *pendente lite,* yet it "has been the constant practice of the Court of Chancery, both before and since the Revised Statutes, to make equitable provision for all these matters; and in so doing it has been guided by the decisions of the ecclesiastical courts of England in similar cases. This has not been done upon the theory that the court was vested with the jurisdiction of the ecclesiastical courts of England in matrimonial cases, or that (except in special cases hereafter referred to), it ever possessed any jurisdiction in cases of divorce other than that which was conferred by our own statutes; but upon the ground of the general equitable jurisdiction of the court, and also that when our statutes did confer jurisdiction upon the Court of Chancery, in those actions for divorce which by the English law are solely cognizable in the ecclesiastical courts, the grant of that jurisdiction carried with it by implication the incidental powers which were indispensable to its proper exercise, and not in conflict with our own statutory regulations on the same subject."

Under the general equity powers of this court it seems both proper and desirable to exact as a condition for the continuance of alimony — itself, as before shown, resting in discretion — the appearance by defendant for identification, especially as a special proceeding or process for that purpose formerly existed and was employed in the ecclesiastical courts of England. The order appealed from should be affirmed.

J. F. DALY, J. — I concur, upon the authorities cited.

BOOKSTAVER, J., concurred.

Order affirmed.