DIANA F. LANGERMAN et al., by LENORE LANGERMAN, Their Guardian ad Litem, Appellants, *v.* NATHANIEL LANGERMAN, Respondent.

Argued January 9, 1952; decided March 13, 1952.

*Joseph K. Reichbart* and *Martin Rosen* for appellants. I. The Nevada decree embodying a New York separation agreement which provides for support and maintenance of the infants is not binding upon them in an action for additional support and maintenance. (*Urquhart* v. *Urquhart,* 272 App. Div. 60, 297 N. Y. 689; *Matter of Lindgren,* 293 N. Y. 18; *Matter of Karchner* v. *Kane,* 275 App. Div. 715; *Mallina* v. *Mallina,* 167 Misc. 343.) II. The Supreme Court of the State of New York has power in equity to compel a father to support his natural child apart from statute. (*Wellesley* v. *Beaufort,* 2 Russ. 23, 38 Eng. Reprint 244; *Butler* v. *Freeman,* 3 Atk. 58; *Stocken* v. *Stocken,* 4 Myl. & Cr. 95; *Mencher* v. *Young,* 2 Myl. & K. 490; *Ransome* v. *Burgess,* L. R. 3 Eq. 773; *Simonds* v. *Simonds,* 154 F. 2d 326; *Schneider* v. *Schneider,* 141 F. 2d 542; *Parker* v. *Parker,* 335 Ill. App. 293; *Paxton* v. *Paxton,* 150 Cal. 667; *Upchurch* v. *Upchurch,* 196 Ark. 324; *Campbell* v. *Campbell,* 200 S. C. 67; *Daugherty* v. *Englar,* 112 Kan. 583; *McClaugherty* v. *McClaugherty,* 180 Va. 51; *Green* v. *Green,* 210 N. C. 147; *Furman* v. *Van Sise,* 56 N. Y. 435; *Laumeier* v. *Laumeier,* 237 N. Y. 357; *Finlay* v. *Finlay,* 240 N. Y. 429; *Sandfort* v. *Sandfort,* 278 App. Div. 331.) III. The cause of action to compel a father to support his children vests in the children, who may sue by their mother as guardian ad litem. (*De Brauwere* v. *De Brauwere,* 203 N. Y. 460; *Sandfort* v. *Sandfort,* 278 App. Div. 331; *Schneider* v. *Schneider,* 141 F. 2d 542; *Finlay* v. *Finlay,* 240 N. Y. 429.) IV. The New York Supreme Court is a court of original and unlimited jurisdiction and must, under the State Constitution, have jurisdiction to grant the relief herein. (*People ex rel. Swift* v. *Luce,* 204 N. Y. 478; *Decker* v. *Canzoneri,* 256 App. Div. 68; *De Hart* v. *Hatch,* 3 Hun 375; *Mussen* v. *Ausable Granite Works,* 63 Hun 367.)

*David L. Schreiber* and *Morris Buchter* for respondent. I. The Nevada decree is in every sense binding upon the infants as well as upon their mother with respect to the question of their support. (*Lynn* v. *Lynn,* 302 N. Y. 193; *Yarborough* v. *Yarborough,* 290 U. S. 202; *Esenwein* v. *Commonwealth,* 325 U. S. 279; *Weintraub* v. *Weintraub,* 302 N. Y. 104; *Finlay* v. *Finlay,* 240 N. Y. 429; *Ansorge* v. *Armour,* 267 N. Y. 492.) II. The complaint was properly dismissed for want of jurisdic-

tion. (*Barber* v. *Barber*, 21 How. [U. S.] 582; *Matter of Bedrick* v. *Bedrick*, 151 Misc. 4, 241 App. Div. 807; *Moen* v. *Thompson*, 186 Misc. 647; *Matter of Herbert* v. *Herbert*, 198 Misc. 103; *Worthington* v. *Worthington*, 212 Mo. App. 216; *Rawlings* v. *Rawlings*, 121 Miss. 140; *Sikes* v. *Sikes*, 158 Ga. 406; *Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456; *Griffin* v. *Griffin*, 47 N. Y. 134; *Ramsden* v. *Ramsden*, 91 N. Y. 281; *Johnson* v. *Johnson*, 206 N. Y. 561.) III. Infants have no cause of action against their father for support. (*Yarborough* v. *Yarborough*, 290 U. S. 202; *Farah* v. *Farah*, 196 Misc. 460, 276 App. Div. 1000; *King* v. *King*, 190 Misc. 741; *Johnson* v. *Johnson*, 206 N. Y. 561; *Matter of Stern*, 285 N. Y. 239; *Finlay* v. *Finlay*, 240 N. Y. 429.) IV. The Domestic Relations Court Act of the City of New York does not entitle the infants to litigate in the Supreme Court.

CONWAY, J. The infant plaintiffs brought this action in the Supreme Court, New York County, by their mother as guardian ad litem seeking increased support from defendant, their father, over and above the provision made for them in a divorce decree granted in the State of Nevada where both spouses had, by appearance in the action, submitted themselves to the court's jurisdiction. Incorporated in that decree, dated December 16, 1948, are a separation agreement entered into by plaintiffs' parents, dated October 27, 1948, and a modification agreement, dated December 7, 1948. The two agreements gave custody of the children to the mother and provided for the payment to her of $125 a week for her separate maintenance and support. The infant plaintiffs were to receive $25 a week each for separate maintenance, support and education, in addition to which the father undertook to pay all medical expenses incurred on their behalf during their minority.

The complaint alleges that the support provisions are inadequate to the needs of the infant plaintiffs and in addition are below the standards maintained for them during the marriage and below the standards of support which the father is able to afford by reason of his wealth and an annual income alleged to be in excess of $40,000. No new circumstances or change of conditions are alleged in the complaint and no claim is made that defendant is not complying with all of the provisions and directions of the decree. The prayer for relief seeks to have the

defendant ordered to contribute at least $100 a week for the support and maintenance of each of the infant plaintiffs. In addition it prays for declarations that neither the Nevada decree nor the separation agreements are binding on the rights and interests of plaintiffs so as to preclude them from bringing an action for increased support and maintenance.

Defendant moved to dismiss the complaint under rule 106 of the Rules of Civil Practice upon the grounds (1) that the complaint did not state facts sufficient to constitute a cause of action, and (2) that the court had no jurisdiction of the subject matter. The order of Special Term granting the motion and dismissing the complaint was affirmed by the Appellate Division by a closely divided court and the case is now here on an appeal by the infant plaintiffs.

We conclude that the complaint was properly dismissed for lack of jurisdiction. Infant plaintiffs' contention that the Supreme Court of this State has inherent power in equity to compel a father to support his child will not survive analysis. " The jurisdiction of the courts of equity of the United States is the same as that of England, whence it is derived." (*Barber* v. *Barber,* 21 How. [U. S.] 582, 592.) Under the English law a court of equity had no inherent power to compel the support of a child on petition to it for that purpose. It is said in 17 Halsbury's Laws of England (1911) at page 114 that " Except under the operation of the poor law, there is no actual legal obligation on a father or mother to maintain a child, unless the neglect to do so would bring the case within the criminal law." An exception existed in the case of a parent who had control of a child's property and failed to make suitable provisions therefrom for the support of the child (17 Halsbury's Laws of England [1911], p. 114). In addition it was recognized that a person who had furnished necessaries to an infant, with which the father had failed to provide him, might recover their value from the parent. (17 Halsbury's Laws of England [1911], p. 114, *supra.*) The courts of this State have also recognized that a cause of action exists under those circumstances. (*De Brauwere* v. *De Brauwere,* 203 N. Y. 460, 464; *Van Valkinburgh* v. *Watson,* 13 Johns. 480.)

In England matrimonial matters and incidental questions of support were dealt with solely by ecclesiastical courts and the

English law relating to matrimonial causes constituted a part of the ecclesiastical law of that country which has never been adopted by this State. (*Caldwell* v. *Caldwell,* 298 N. Y. 146, 152; *Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456, 462; *Walker* v. *Walker,* 155 N. Y. 77, 80; *Burtis* v. *Burtis,* 1 Hopk. Ch. 557.) Jurisdiction over matrimonial causes remained in the ecclesiastical courts until long after this country became an independent nation. It was not until the Matrimonial Causes Act in 1857 (20 & 21 Vict., ch. 85) that jurisdiction of matrimonial causes was transferred to a newly established Divorce Court. (See 11 Halsbury's Laws of England [1910], p. 505.)

Section 1 of article VI of the Constitution of New York provides that the Supreme Court shall have "general jurisdiction in law and equity". The jurisdiction which our Supreme Court inherited from England was the common-law and equity jurisdiction possessed and exercised at the time this country became an independent nation. This jurisdiction is discussed in *Matter of Steinway* (159 N. Y. 250, 255–258), and is legislatively described in section 64 of the Civil Practice Act which reads: "*General jurisdiction of supreme court.* The general jurisdiction in law and equity which the supreme court of the state possesses under the provisions of the constitution includes all the jurisdiction which was possessed and exercised by the supreme court of the colony of New York at any time, and by the court of chancery in England on the 4th day of July, 1776; with the exceptions, additions and limitations created and imposed by the constitution and laws of the state. Subject to those exceptions and limitations the supreme court of the state has all the powers and authority of each of those courts and exercises the same in like manner."

We have recognized in numerous cases that the jurisdiction of the courts of this State in matrimonial actions is limited to such powers as are expressly conferred upon them by statute. (See, e.g., *Caldwell* v. *Caldwell,* 298 N. Y. 146, 152, *supra; Ackerman* v. *Ackerman,* 200 N. Y. 72, 76; *Walker* v. *Walker,* 155 N. Y. 77, 80, *supra; Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456, 462–464, *supra; Griffin* v. *Griffin,* 47 N. Y. 134, 138.) During the Colonial period the colony of New York never had any court possessing jurisdiction of matrimonial causes (see *Burtis* v. *Burtis,* 1 Hopk. Ch. 557, *supra*). Prior to the year

1787 the only remedy of aggrieved persons in matrimonial causes had been by application to the Colonial Governor and his council or to the Colonial Legislature and later to the State Legislature for relief. (*Burtis* v. *Burtis,* 1 Hopk. Ch. 557, 564–565, *supra.*) In that year an act was passed which authorized the Court of Chancery to entertain proceedings and to decree divorce on the sole ground of adultery. In 1813, the first statute was enacted conferring on the courts of this State power to make suitable provisions for the support of children of the marriage as an incident to a matrimonial action. (See Seventh Annual Report of N. Y. Judicial Council, 1941, pp. 269–276; *Erkenbrach* v. *Erkenbrach,* .96 N. Y. 456, *supra.*) However, the Supreme Court of this State has never been granted jurisdiction to order support and maintenance for the children of a dissolved marriage where a separate action is brought for that sole purpose as is the case here. The relief sought may be granted only as an incident to a marital action. (*Johnson* v. *Johnson,* 206 N. Y. 561; *Ramsden* v. *Ramsden,* 91 N. Y. 281; see, also, *Matter of Stern,* 285 N. Y. 239.) The jurisdiction of the Supreme Court to order maintenance and support for children is measured by the provisions of sections 1164, 1170 and 1170-a of the Civil Practice Act which restrict it to granting relief as an incident of a marital action before the court. Moreover, prior to˚ the enactment of section 1170-a of the Civil Practice Act in 1941 (L. 1941, ch. 249, as amd.), the Supreme Court had no jurisdiction to deal with the matter of support of infant children of the marriage where the court refused to grant the relief sought in the matrimonial action. (*Davis* v. *Davis,* 75 N. Y. 221, 227; *Ramsden* v. *Ramsden,* 91 N. Y. 281, 283, *supra*; *Johnson* v. *Johnson,* 206 N. Y. 561, 565, *supra*; see, also, *Finlay* v. *Finlay,* 240 N. Y. 429, 432.)

The custody cases relied upon by infant plaintiffs stand on a different footing. Where the custody or guardianship of a child is in dispute a writ of habeas corpus may be obtained (Domestic Relations Law, § 70) or a petition may be made to the Supreme Court. (*Finlay* v. *Finlay,* 240 N. Y. 429, *supra.*) In England Lord ESHER pointed out that in reference to the right of custody of a child " there was a common law jurisdiction, under which the Courts used to deal with these matters by habeas corpus " (*Queen* v. *Gyngall,* [1893] 2 Q. B. 232, 238)

as in the case of one who is claimed to be improperly detained apart from the parent-child relationship. It was also recognized in England before jurisdiction of matrimonial causes was removed from the ecclesiastical courts by the Matrimonial Causes Act of 1857 (*supra*), that the right to custody of a child might be enforced either by writ of habeas corpus or by petition in chancery. (See, e.g., *Matter of Spence,* 2 Phil. Ch. 247 [1847]; 17 Halsbury's Laws of England [1911], pp. 105, 109.)

The only provisions for compelling future support of a child, who is a resident of New York City, where a nonmarital proceeding is brought for that sole purpose are contained in the Domestic Relations Court Act of the City of New York. That act became effective October 1, 1933 (L. 1933, ch. 482) and was enacted pursuant to permission granted by section 18 of article VI of the Constitution of the State of New York as amended in 1921 and 1925.

Section 91 of that act provides in part as follows: " The family court shall have (1) Jurisdiction within the city to hear and determine *all* proceedings to compel the support of a wife, child or poor relative * * *." (Emphasis supplied.) We have said that the word " all " as used in section 91 means just that. In *Matter of Franklin* v. *Franklin* (295 N. Y. 431, 433), we said: " Within the city of New York, jurisdiction to hear and determine *all* proceedings to compel the support of a wife is given to the Family Court — a division of the Domestic Relations Court of the city. (See Domestic Relations Court Act of the City of New York, §§ 5, 91.) " (Emphasis supplied.) The Family Court has exclusive jurisdiction under section 91 and subdivision 1 of section 137 to hear and determine all proceedings to compel the support of a child whether the parents have or have not been validly divorced. (*Matter of Franklin* v. *Franklin,* 295 N. Y. 431, 435, *supra.*) The fact that a child is not likely to become a public charge does not divest the Family Court of jurisdiction. Section 92 of the Domestic Relations Court Act of the City of New York provides:

" In the exercise of its jurisdiction the court shall have power

" (1) To order support of a wife or child or both irrespective of whether either is likely to become a public charge, as justice requires having due regard to the circumstances of the respective parties.

"(2) To include in the requirements of an order for support the providing of necessary shelter, food, clothing, care, medical attention, expenses of confinement, the expense of educating his child, the payment of funeral expenses, and other proper and reasonable expenses."

Where the petition is made by a person other than the mother of the child the court may not order support in excess of $50 per week: "Such limitation shall not, however, apply to a petitioning wife who is pregnant or the mother of a child or children in her custody." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [3].) Outside of New York City, jurisdiction to order support of a child is conferred on the Children's Courts by sections 30 and 30-a of the Children's Court Act of the State of New York. Those courts are not limited to making a maximum award of $50 a week as support where the petition is by a person other than the mother, having custody of a child, or a pregnant wife.

Here, a Nevada statute, enacted before entry of the decree herein, permits its courts to modify their divorce decrees insofar as they deal with maintenance and support of infant children [1], and, since that is so — regardless of what the rule might be in the absence of such a statute — the courts of this State have the power to act in like fashion. (*Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, 438; *Halvey* v. *Halvey,* 330 U. S. 610, 614; *Johnson* v. *Muelberger,* 340 U. S. 581.) In other words, the full faith and credit clause of the Federal Constitution does not preclude a petition for additional support in the Domestic Relations Court. Congress pursuant to the authority conferred upon it by section 1 of article IV of the Federal Constitution has provided that judgments "shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State * * * from which they are taken." (1 U. S.

[1] Section 9462 of the Nevada Compiled Laws insofar as applicable here provides: "* * * provided that in actions for divorce the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same."

Stat. 122, now U. S. Code, tit. 28, § 1738.) Thus a judgment in the rendering State is entitled to the same finality, i.e., is *res judicata* only to the same extent in sister States as it is in the rendering State. (*Magnolia Petroleum Co.*, v. *Hunt*, 320 U. S. 430, 438, *supra*; *Halvey* v. *Halvey*, 330 U. S. 610, 614, *supra*.) Thus in *Halvey* v. *Halvey* (*supra*, p. 614), the Supreme Court of the United States has epitomized the doctrine by saying: " So far as the Full Faith and Credit Clause is concerned, what Florida could do in modifying the decree, New York may do."

The judgment of the Appellate Division should be affirmed, without costs.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgment affirmed.