## BERRY v. BERRY.

(Supreme Court, Appellate Division, First Department. January 8, 1909.)

1. MARRIAGE (§ 60*)—ANNULMENT—ACTIONS—EVIDENCE.

Evidence *held* to support findings that plaintiff married defendant when plaintiff had a wife by a former marriage living who had not absented herself, and hence to establish that the marriage to defendant was void under the domestic relations law (Laws 1896, p. 216, c. 272, § 3, subd. 3), providing that a marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless such former husband or wife has absented himself or herself for five successive years without being known to the person to be living during that time.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 131; Dec. Dig. § 60.*]

2. COURTS (§ 148*)—MATRIMONIAL CASES—SOURCE OF JURISDICTION.

While the entire jurisdiction of the Supreme Court in matrimonial cases is conferred and regulated by statute, yet in the exercise of that jurisdiction, unless controlled by positive enactment, it proceeds as a court of equity; it being vested with the jurisdiction as successor of the court of chancery.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 375, 377, 380, 381, 398; Dec. Dig. § 148.*]

3. ACTION (§ 25*)—EQUITABLE ACTIONS—ACTION TO ANNUL CONTRACTS.

Actions to annul contracts for causes existing prior to or at the making thereof are equitable.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 127; Dec. Dig. § 25.*]

4. MARRIAGE (§ 60*)—ANNULMENT—CONSTRUCTION OF STATUTE.

Code Civ. Proc. § 1745, provides that an action to annul a marriage upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, may be maintained by either of the parties during the lifetime of the other, etc. Provision is also made for legitimizing children where it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith and with the full belief that the former husband or wife was dead, or without any knowledge on the part of the innocent party of such former marriage. *Held*, that the legislative intent was to protect the innocent and relieve those who had acted in good faith, and the section gives no right to a guilty husband who has knowingly contracted a bigamous marriage to sue to have it annulled, but the court in the exercise of its equity jurisdiction will leave him in the condition in which he has put himself.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 125; Dec. Dig. § 60.*]

Scott and Ingraham, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Thomas W. Berry against Margaret Berry. Judgment of dismissal, and plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

H. B. Bradbury, for appellant.

I. G. Frauenthal (Charles Weishaupt, of counsel), for respondent.

CLARKE, J. This is an action to annul a marriage brought by the husband upon the ground that at the time of the marriage he

had a legal wife, to whom he had been previously married, living and who was still living. The learned court found as matter of fact: That on or about the 15th day of September, 1885, at Leeds, in the county of York, England, plaintiff and one Emma Bulmer were married, and that subsequent to said marriage they lived together as man and wife for the period of about one year. That plaintiff left England and came to the city and state of New York, where he has ever since resided. That, at the time he left England, he promised to send for said Emma Bulmer to come to New York at some future time. That prior to and continuously from September 15, 1885, to May 24, 1907, the said Emma Bulmer resided in Leeds. That during of all said period plaintiff's father resided at 15 Fox and Grapes Yard, Leeds, and that the said Emma Bulmer and her whereabouts were well known to him. That on or about December 31, 1896, plaintiff received a letter dated December 21, 1896, from one Basfield, residing in Leeds, the material portions of which read as follows:

"I was sorry when I heard of Emma's death. I hope you will have got over it before this. I should think you will be glad to have some one about you as a friend. Albert says you were just about to send for her over or had sent her money to come with. I am sorry at your disappointment and hope you will soon find comfort in another's company."

That on or about February 22, 1897, plaintiff and defendant were married in the city of New York, and lived and cohabited together as man and wife in said city from the time of such marriage to and until about the 1st day of March, 1906. That, before contracting the marriage, plaintiff failed and neglected to communicate with the proper and official authorities in Leeds, county of York, England, to ascertain the truth or falsity of the letter hereinbefore referred to, so far as it concerned the alleged death of said Emma Bulmer, or to make further necessary inquiries. That, at the time of his marriage with the defendant, plaintiff, in answer to the officiating rector, when asked if he was single, widowed, or divorced, replied that he was single, and, in reply to the question "number of groom's marriage," replied that it was his first. That in the month of August, 1904, plaintiff went to Leeds, England, on a visit, met said Emma Bulmer, conversed with her, and returned the same month to the city of New York. That, well knowing that said Emma Bulmer was still living, plaintiff continued to live and cohabit with defendant as her husband up to and until March, 1906. That the allegation under oath in the complaint that at the time of the marriage between plaintiff and defendant "plaintiff had not seen nor heard from the said Emma Bulmer for a long period of time, to wit, more than five years," is untrue. That plaintiff has not proven or established that Emma Bulmer absented herself for five years or for any period. And, as conclusions of law, that the plaintiff has not acted in good faith; that the marriage should not be annulled at the suit of the plaintiff; that plaintiff has not made out a cause of action; and that the complaint should be, and is hereby, dismissed upon the merits.

The complaint was verified on the 13th of March, 1906. The evidence sustains the findings of fact, and establishes that the marriage

of plaintiff to the defendant was void under section 3 of the domestic relations law (chapter 272, p. 216, Laws 1896), which provides that:

"A marriage is absolutely void if contracted by a person whose husband or wife, by a former marriage, is living, unless * * * (3) such former husband or wife has absented himself or herself for five successive years then last passed, without being known to such person to be living during that time."

Section 4 thereof provides:

"Voidable Marriages. A marriage is void from the time its nullity is declared by a court of competent jurisdiction, if either party thereto * * * (5) has a husband or wife by a former marriage living, and such former husband or wife has absented himself or herself for five successive years then last passed, without being known to such party to be living during that time. Actions to annul a void or voidable marriage may be brought only as provided in the Code of Civil Procedure."

Section 1743 of the Code of Civil Procedure provides that:

"An action may also be maintained to procure a judgment declaring a marriage contract void and annulling the marriage for either of the following causes existing at the time of the marriage. * * * (2) That the former husband or wife of one of the parties was living and that the marriage of the former husband or wife was then in force."

Section 1745 provides that:

"An action to annul a marriage upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, may be maintained by either of the parties during the lifetime of the other, or by the former husband or wife."

Provision is also made for legitimizing children where it appears, and the judgment determines, that the subsequent marriage was contracted by at least one of the parties thereto in good faith, and with the full belief that the former husband or wife was dead, or without any knowledge on the part of the innocent party of such former marriage.

The question here presented is whether the conclusions of law are supported by the findings of fact, whether the husband who contracted a void marriage in bad faith can maintain an action to relieve himself of the consequences of said marriage by a judgment of the court annulling the same, and so obtain the benefit of the provisions of section 1754 of the Code of Civil Procedure providing that:

"A final judgment annulling a marriage rendered during the lifetime of both the parties, is conclusive evidence of the invalidity of the marriage in every court of record or not of record, in any action or special proceeding, civil or criminal."

The learned Special Term in its opinion stated that:

"It is apparent that his allegation that he had not seen nor heard of the said Emma Bulmer for more than five years is untrue. It further appears from the complaint itself that plaintiff alleges that he lived with the defendant as husband and wife from the 20th day of February, 1897, until about the 1st day of March, 1906. And, again, 'that, since it has been so ascertained that the said Emma Bulmer was living and is still living, plaintiff and defendant have not cohabited together.' But the record shows that plaintiff was certainly aware that Emma Bulmer was living in 1904. It is manifest, therefore, that plaintiff has sworn falsely in his complaint upon this head. And that he should now invoke the jurisdiction of a court of equity under such

circumstances is reprehensible. The defendant should have been the plaintiff here. The plaintiff, at all events, by his conduct has forfeited any right to a hearing or to a decree."

Does the court in actions to annul a marriage sit as a court of equity, and is the equitable maxim that a plaintiff must come into court with clean hands to be applied? Griffin v. Griffin, 47 N. Y. 134, was an action to annul a marriage brought by the husband upon the ground that the former husband of the defendant was living at the time of making such marriage contract. Defendant had judgment and an allowance and costs were awarded, and the question before the court was the power of the court to make such an award. Rapallo, J., said:

"It is conceded that there is no statute in terms authorizing the order, and that, if sustained, it must rest upon the incidental powers formerly vested in the Court of Chancery, in cases of this description, and to which the Supreme Court has succeeded. Section 35, art. 2, tit. 1, c. 8, pt. 2, Rev. St. (2 Rev. St. [1st Ed.] 144), provides that suits to annul a marriage shall be by bill, and shall be conducted in the same manner as other suits prosecuted in courts of equity; and the court shall have the same power to award issues, to decree costs, and to enforce its decrees, as in other cases."

Referring to the provisions for alimony in divorce and separation cases, the court said:

"It has been the constant practice of the Court of Chancery, both before and since the Revised Statutes, to make equitable provision for all these matters, and in so doing it has been guided by the decisions of the ecclesiastical courts of England in similar cases. * * * This has not been done upon the theory that the Court of Chancery of this state was vested with the jurisdiction of the ecclesiastical courts of England in matrimonial cases, or that (except in special cases hereafter referred to) it ever possessed any jurisdiction in cases of divorce other than that which was conferred by our own statutes; but upon the ground of the general equitable jurisdiction of the court, and also that when our statutes did confer jurisdiction upon the Court of Chancery in those actions for divorce which by the English law are solely cognizable in the ecclesiastical courts, the grant of that jurisdiction carried with it by implication the incidental powers which were indispensable to its proper exercise, and not in conflict with our own statutory regulations on the same subject. * * * Jurisdiction in cases of divorce was conferred here, not as a special and limited jurisdiction granted to a common-law court, but it was granted to a Chancery Court; and the court in administering it has always called to its aid its own equity powers and the decisions of the ecclesiastical courts of England in like cases. The Court of Chancery of this state has in some cases entertained bills to declare the nullity of marriages, independently of any statute conferring jurisdiction. But these were cases in which the marriage was sought to be declared void for some cause for which chancery had power to cancel or avoid all contracts, such as lunacy or fraud, and it was held that the marriage contract was not excepted from the operation of this general jurisdiction; and that, if it was not exercised by the Court of Chancery in England in matrimonial cases, it was not for want of jurisdiction, but because other tribunals existed there competent to afford full relief. * * * Prior to 1787 there was no tribunal in this state authorized to grant a divorce, and the only remedy of aggrieved individuals in matrimonial cases was by application to the Legislature for relief. In 1787 an act was passed reciting that it was more advisable for the Legislature to make general provision for such cases than to afford relief to individuals without a proper trial, and therefore conferring jurisdiction upon the Court of Chancery to decree divorces in cases of adultery. Laws 1787, p. 494, c. 69. This was the only cause of divorce until the year 1813, when divorce, on the application of the wife, on the ground of cruel treatment was authorized, and in 1824 the hus-

band was enabled to sue for a divorce on the same ground. * * * By the Revised Statutes the powers of the Court of Chancery on the subject of divorces were enlarged. Article 2, tit. 1, c. 8, pt. 3 (1st Ed.), entitled 'Of divorces on the ground of the nullity of the marriage contract,' enumerates five causes for which, if they existed at the time of the marriage, the chancellor may declare void the marriage contract. * * * The section was framed, as appears by the revisers' notes, in view of the decisions in Wightman v. Wightman, 4 Johns. Ch. 343, and Burtis v. Burtis, 1 Hopk. Ch. 557, 14 Am. Dec. 563, and the revisers refer to the latter case as establishing that the whole jurisdiction of the Court of Chancery in relation to marriage (except when the contract is void on the same grounds on which other contracts may be avoided) is conferred and limited by statute. * * * From this review it will be seen that in some actions for nullity the jurisdiction of chancery was derived wholly from the statute; yet in others it existed independently of the statute, and as a part of the original jurisdiction of the court. * * * It must be remembered that this jurisdiction was conferred, not upon a common-law court, but upon the Court of Chancery, and in view of its general powers to adjust remedies and annex conditions to the exercise of rights and the redress of injuries."

And, upon this course of reasoning, although not authorized by any statute, the Court of Appeals affirmed the making of the order upon the general ground of the equitable powers of the court in which jurisdiction of the subject-matter had been vested.

The Supreme Court is vested with the powers of the Court of Chancery. I take it, therefore, that the doctrine is still true that, while its entire jurisdiction in matrimonial causes is conferred and regulated by statute, yet, in the exercise of that jurisdiction, unless controlled by positive enactment, it proceeds as a court of equity. Indeed, the very provisions in the sections of the Code of Civil Procedure relating to divorce and separation, permitting counterclaims and denying relief to a guilty plaintiff, no matter how guilty the defendant may prove to have been, is statutory proof of the existence in that court in such actions of the maxim, "The plaintiff must come into court with clean hands." Actions to annul contracts for that which existed prior to or at the making thereof are equitable; and, as pointed out in the Griffin Case, such actions to annul the marriage contract for certain causes were entertained in the Court of Chancery prior to the enactment of the statute and independent thereof. It seems to me, therefore, that the court in actions to annul a marriage under the provisions of the Code of Civil Procedure, derived from the statutes theretofore existing, acts as a court of equity. If this were an ordinary contract which the plaintiff was seeking to have annulled in a court of equity, it cannot be doubted but that upon such evidence and findings of fact as appear in this case he would be peremptorily dismissed as endeavoring to take advantage of his own wrong, as not coming into court with clean hands, and as attempting a fraud upon the court.

But it is urged that section 1745 of the Code of Civil Procedure provides that "an action to annul a marriage, upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, may be maintained by either of the parties during the lifetime of the other, or by the former husband or wife," and that, as there is no limitation in the section, a guilty husband, who has knowingly and wickedly contracted a bigamous mar-

riage, and subsequently grown tired of the new wife, and his obligations thereto, is entitled to bring the action to relieve himself for all time of such marriage, its obligations, and its consequences. I do not think that the statute is susceptible of such construction. I think that, reading all of the provisions together, the object of the Legislature was to protect the innocent and to relieve those who had acted in good faith. The Court of Appeals in Price v. Price, 124 N. Y. 589, 27 N. E. 383, 12 L. R. A. 359, after a review of the prior condition of the law, said:

"Such was the condition of the law when the Revised Statutes of this state were enacted, and experience having proved that the statute in respect to bigamy had induced the contraction of second marriages by persons having spouses who had been absent for five years, and believed to be dead, which after the return of the absent husband or wife were found to be void and the issue illegitimate, it was for the purpose of alleviating some of these consequences enacted. [Citing the provisions of the statutes.] * * * The changes effected by the Revised Statutes in the rights of parties entering in good faith into a marriage while one has a living and undivorced spouse who has been absent for five years and not known to be living are: (1) The marriage is not void from the beginning, but voidable. (2) When judicially annulled, it is only void from the date of the judgment. (3) When so annulled, the issue may be adjudged entitled to succeed to the estate of the parent who was competent to marry in the same manner as legitimate children. (4) It has been held that, while such a marriage remains unannulled, the cohabitation of the parties is not adulterous (Valleau v. Valleau, 6 Paige, 207); also that the survivor is entitled to administration (White v. Lowe, 1 Redf. Sur. 376), and before the passage of the acts for the protection of married women that the husband could hold and transfer the personal property of the wife (Cropsey v. McKinney, 30 Barb. 47)."

The words "either party" may be entirely satisfied, it seems to me, when it shall appear that the plaintiff, although married at the time of the second marriage, was within the exception stated in the domestic relations law, namely, that such former husband or wife had absented himself or herself for five successive years then last passed without being known to such person to be living during that time, and that he had acted with the good faith referred to in section 1745 of the Code of Civil Procedure. If the contrary appears, that he acted with knowledge and in bad faith, the court, under the general principles of equity jurisprudence, should give him no aid, but leave him in that condition in which he has put himself.

It follows that the judgment appealed from should be affirmed, with costs to the respondent.

PATTERSON, P. J., and LAUGHLIN, J., concur.

SCOTT, J. (dissenting). It is perfectly clear from the facts found by the court below, and it is conceded on all hands, that the marriage between plaintiff and defendant was void ab initio, because the plaintiff had, when he married defendant, another wife living, his marriage with whom had never been dissolved. Domestic Relations Law (Laws 1896, p. 216, c. 272) § 3; Code Civ. Proc. § 1743. The court below refused to enter a decree declaring the marriage void upon the ground "that the plaintiff has not acted in good faith," and "that the marriage should not be annulled at the suit of the plaintiff," thus applying to

this purely statutory action a rule which is often applied in equitable actions where a plaintiff is denied affirmative relief when the appeal is to the judicial discretion of the court because he has not come into court with clean hands.  The plaintiff does not ask that his marriage be annulled.  Such relief would be appropriate when a marriage was valid when made, but not to a case like the present, when the marriage was never valid, but has always been void.  And it will continue to be void whether or not a decree to that effect is entered in this action. I have said that this action is purely statutory, and so it is.  It is true that, even before the Revised Statutes, the Court of Chancery in this state in some cases sustained bills to declare the nullity of marriages independent of any statute conferring jurisdiction.  But such cases were strictly limited to those in which the marriage was sought to be annulled for some cause for which chancery had power to cancel or avoid all contracts, such as lunacy and fraud; it being considered that the marriage contract was not excepted from the operation of this general jurisdiction.  But in all other cases the jurisdiction of the Court of Chancery of this state, in actions for annulment or divorce, either on the ground of nullity or for some cause arising subsequent to marriage, has rested wholly upon the statutes.  Griffin v. Griffin, 47 N. Y. 134–138.  The domestic relations law, after declaring that a marriage such as the court has found was entered into between these parties is absolutely void, provides that:

"Actions to annul a void or voidable marriage may be brought only as provided in the Code of Civil Procedure."  Section 4.

As has been remarked, the use of the word "annul" with reference to a marriage void ad initio is not strictly accurate, for that which does not exist cannot be annulled.  The Code provides that:

"An action may also be maintained to procure a judgment declaring a marriage contract void and annulling the marriage for either of the following causes existing at the time of the marriage.  *  *  *  (2) That the former husband or wife of one of the parties was living and that the marriage with the former husband or wife was then in force."

Section 1745 provides that:

"An action to annul a marriage upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, may be maintained by either of the parties during the life of the other, or by the former husband or wife."

Here is an express legislative declaration that an action of this nature may be maintained by the party whose former husband or wife was living, as well as by the other party to the marriage contract, and it would be a waste of time to stop to argue that, when the Code gives a party the right to maintain an action, the right to obtain a judgment, upon proof of the necessary facts, must follow.  The latter part of section 1745 in no wise limits the right of the guilty party to maintain such an action, but deals solely with the legitimacy, custody, and right to inherit of the children of such a void marriage where the subsequent marriage was contracted by one of the parties in good faith, and with the belief that the former husband or wife was dead.  As the parties to this action appear to have had no children, this por-

tion of the section is irrelevant to the present discussion. Thus we have presented an absolutely void marriage, and an action to declare its invalidity brought by a party expressly authorized by statute to maintain such an action.

Upon what ground, then, can a judgment be denied declaring such invalidity? The only ground suggested is that because he acted in contracting the second marriage with knowledge of his incapacity to contract it, and in bad faith, the court under the general principles of equity jurisprudence should give him no aid, but leave him in the condition in which he has put himself. If the court was acting in such a case as this under its general equity jurisdiction, and if a decree declaring the marriage void would put the plaintiff in any better position than he is now in, there would be some force in the reason assigned for refusing a decree. But the court is not acting under its general equity powers. It is acting under jurisdiction conferred upon it by statute, and the plaintiff has brought himself precisely within the terms of the statute. Nor can the court by any decree it makes, or by refusing a decree, change the status of the parties, or validate an absolutely void marriage. The plaintiff assumed no matrimonial obligations to the defendant by entering into it, and whenever an attempt is made to enforce any such obligations he can relieve himself, decree or no decree, by showing the invalidity of the marriage. Such a decree would, of course, be no defense to a prosecution for bigamy, for in the very nature of things a bigamous marriage is always a void one, since the very definition of bigamy is the marriage with a second husband or wife while a former husband or wife is living. Pen. Code, § 298. Whether or not a party who knowingly contracts a void and bigamous marriage should be permitted to maintain an action to have its invalidity judicially determined is for the Legislature to decide, and not the courts. When the Legislature has enacted that he may maintain such an action, as I think it clearly has in this state, there is no ground for refusing to enter judgment for reasons which apply only to actions of purely equitable cognizance where the discretionary powers of a court of equity are invoked. In my opinion, upon the facts found, the plaintiff is entitled to a decree declaring his marriage with the defendant void, as it unquestionably is and has been from the beginning. The judgment appealed from should be reversed, and, since all the facts necessary to support a judgment have been found by the court below, a judgment should be rendered for the plaintiff.

INGRAHAM, J., concurs.