LEWIS B. BAYS, an Infant, by DUDLEY BAYS, His
Guardian ad Litem, Plaintiff, *v.* MARY A. BAYS,
Defendant.

(Supreme Court, Cortland Special Term, December, 1918.)

Marriage — annulment on ground of non-age denied — husband and
wife — false statement as to age in order to obtain a marriage
license — Domestic Relations Law, § 16.

Where a minor in order to obtain a marriage license makes
and verifies a false statement giving his age as twenty-one
years, the license must issue and the parties may be married;
and although under section 16 of the Domestic Relations Law
he may be punished for making the false statement the
marriage is valid.

Where plaintiff, a resident of this state, when only twenty
years of age, induced the defendant, who was also a resident
of this state and ten years his senior, to enter into a marriage
with him in the state of Pennsylvania, by making therein a
false affidavit as to his age in order to obtain a marriage
license and by representing to her that he had the written
consent of his father to the marriage but that he would not
show it to the clerk of the court issuing the license, and it
further appears that after the marriage, which presumably
was valid in Pennsylvania, no objection was made by his
parents on the return of the parties to the state of New York,
where they continued to reside as husband and wife for a
period of six months, when for reasons other than non-age,
plaintiff became dissatisfied and he and his wife separated,
the marriage will be held valid under the laws of the state
of New York, and its annulment on the ground that plaintiff
was not twenty-one years of age at the time of the marriage
will be denied upon the ground that plaintiff has not come
into court in good conscience and with clean hands but was
seeking to take advantage of his own wrong.

ACTION to annul a marriage.

L. R. Chase, for plaintiff.

C. V. Coon, for defendant.

DAVIS, J.    The action is to annul a marriage contracted in the state of Pennsylvania, on the ground that the plaintiff was not twenty-one years of age at the time of the marriage.

The parties lived in the city of Cortland, N. Y. They had been acquainted for about one year.   The plaintiff was a chauffeur, residing with his parents, owning an automobile, and apparently engaged in independent employment.   He was twenty years of age on the 21st of July, 1916, and was a mature, intelligent young man.    The defendant was thirty years of age, and employed in domestic service.    She had met the parents of the plaintiff, had been riding with them in plaintiff's automobile on several occasions, and so far as the evidence discloses there had been no objection on their part to his courtship.

On the 29th of August, 1916, the parties left Cortland in an automobile early in the morning and went to Towanda, Penn.   In that state it is provided by the Laws of 1895 (No. 123), as amended by the Laws of 1903 (No. 75), that "No person within this Commonwealth shall be joined in marriage, until a license shall have been obtained for that purpose from the clerk of the orphans court in the county wherein either of the contracting parties resides, or in the county where the marriage is performed," etc.; and by the amending statute last cited, "The clerk of the court shall inquire of the parties applying    *    *    *    for marriage license    *    *    *    relative to the legality of the contemplated marriage, the age of the parties, the consent of parents or guardians of such as are under the full age of twenty-one years, etc., and if there be no legal objection thereto, then he shall grant such marriage license. If any of the persons intending to marry by virtue of such license shall be under twenty-one years of age, the consent of their parents or guardians shall be per-

sonally given before such clerk, or certified under the hand of such parent or guardian, attested by two adult witnesses, and the signature   *   *   *   properly acknowledged,'' — otherwise such license will not issue. The inquiry before the clerk is conducted by requiring answers to be made to printed questions on a blank application for a marriage license, which the applicant is required to sign and verify under oath. The plaintiff, in answer to the question in the blank as to his age, stated it as twenty-one years, and took the oath that the facts set forth in his application were true and correct. Before he made the application, he told the defendant that he had the written consent of his father to his marriage, and exhibited to her some paper purporting to be signed by his father, which he claimed to be the consent, but stated that as he was nearer twenty-one than twenty, he would say that he was twenty-one years of age and he would not show the paper to the clerk.

After having thus obtained the license, the parties were married at Towanda by a clergyman, and returned the same day to the home of plaintiff's parents. To them he introduced the defendant as his wife and no objection was made to the marriage. There the marriage was consummated and the marriage status fixed; and there the parties continued to reside from the 29th of August, 1916, until the 20th of February, 1917. At that time, for some reason not disclosed to the court, but not on the ground that he desired to withdraw from the contract because of his non-age, plaintiff became dissatisfied and the parties separated, and have not since cohabited. There has been no issue, of the marriage.

Section 1744 of the Code of Civil Procedure provides: ''An action to annul a marriage heretofore or hereafter contracted, on the ground that one of the parties

had not attained the age of legal consent, or the *age under which the consent of parents or guardians was required by the laws of the state where the marriage was contracted,* may be maintained by the infant, or by either parent of the infant, or by the guardian of the infant's person." The words italicized were added by the Laws of 1916.

The Pennsylvania statutes I have quoted from were offered in evidence by the plaintiff's attorney, and were received without objection. No other statute fixing any different age of consent in the state of Pennsylvania has been called to my attention, so that I must assume that by requiring the contracting parties to be twenty-one years of age in order to obtain a license, and requiring the consent of their parents or guardian if they are under twenty-one, in order that a license may be obtained, and forbidding the solemnization of the marriage otherwise, the age of legal consent must be twenty-one years.

The marriage would undoubtedly be valid by the laws of this state if contracted here under the same circumstances. The parties were both beyond the age of legal consent (Dom. Rel. Law, § 7) though by an incongruity of the law the license may not issue if it appears from the application that the man is under the age of twenty-one and has not the written consent of his parents. Dom. Rel. Law, § 15. But if he makes and verifies the statement giving his age as twenty-one, as the plaintiff did in this case, the license must issue, the parties may be married, and although the party making the false statement may be punished (Id. § 16), the marriage is valid. *Greenberg* v. *Greenberg,* 97 Misc. Rep. 153; *Kruger* v. *Kruger,* 137 App. Div. 289.

It seems to me that the intent of the legislature in making the amendment to section 1744 of the Code of Civil Procedure in 1916, was to provide a remedy in

this state for parties who had become residents of this state but who were residents of another state at the time the marriage was contracted and the marriage was consummated, so that relief might be obtained in our courts in a proper case. The legislature has by the Domestic Relations Law (Art. II) determined what conditions shall govern citizens of this state in the making of a valid contract of marriage. We must assume that the amendment of 1916 to the Code of Civil Procedure was not made by the legislature to encourage an evasion of the statutory regulations concerning marriage.

The plaintiff's counsel has assumed in his argument and on his brief that the marriage was void because the Pennsylvania statute forbade the performance of a marriage ceremony without the issuance of a license based on proper consent of the parents of the party under twenty-one years of age. The statute does not declare such a marriage void. By the Laws of 1885 (No. 115) a minister, justice or other officer solemnizing the marriage ceremony, or the attesting witnesses thereto, where the parties have not obtained the proper license " shall forfeit and pay the sum of one hundred dollars to and for the use of the county in which said marriage was solemnized." This fine or forfeiture may be recovered in an action of debt with costs. The parties also apparently became liable to punishment for false swearing. Public Laws of 1895, p. 32. These appear to be the only penalties for a violation of the law, and none of the statutes regulating the issuance of licenses and the solemnization of the marriage expressly stated that a marriage contracted without a license is invalid. My attention has been called to no decision of the courts of the state of Pennsylvania since the adoption of the statute cited, declaring such marriages void, and I must assume that the rule pre-

vails there as here, that marriages contracted under a license improperly obtained are, nevertheless, valid. *Kruger* v. *Kruger, supra.*

I do not regard the provisions of section 1744 of the Code of Civil Procedure mandatory in this case. The marriage was not invalid where contracted. It may have been voidable in the state of Pennsylvania if made between citizens of that state, because one of the parties was under the age of legal consent by the laws of the state where the contract was formally made. But in determining whether the courts of this state will grant relief to the plaintiff, we may inquire into the residence or citizenship of the parties, the place where the parties intended the contract should take effect, and where their status was to be established.

When the parties were married they were, as already stated, residents of this state, and it was their apparent intent to return to the state of New York immediately, which they did, and to here establish their marriage status and matrimonial domicile, and here to enter into and perform the contract they had formally made elsewhere.

In *Kinnier* v. *Kinnier,* 45 N. Y. 535, 544, Church, Ch. J., says: "It is now well settled that the *lex loci* which is to govern married persons, and by which the contract is to be annulled, is not the law of the place where the contract was made, but where it exists for the time, where the parties have their domicil, and where they are amenable for any violation of their duties in that relation."

In *Cunningham* v. *Cunningham,* 206 N. Y. 341, the plaintiff resided in New York city and was under the age of eighteen years. The defendant was about forty years of age, and had been a boarder at the house of plaintiff's parents. On the day of the marriage, the defendant took the plaintiff to the City Hall in the

32

city of New York, where he asked for a license to marry her. After failing to obtain a license, he took her to Westwood, N. J., where he procured a minister to perform a marriage ceremony, and then they returned to New York to her parents' home, where they continued to reside the same as they had thereto-fore for several months. They did not cohabit together and the marriage was never consummated. The parents never learned of the marriage until on Easter Sunday the defendant returned home intoxi-cated and announced to the parents that he was boss and that he had married their daughter, that she was his wife and he proposed to have her. A scene fol-lowed in which the police were called in and their trou-bles were aired in the Magistrate's Court, and the daughter brought the action for the annulment of the marriage. A decree of annulment was refused by the Special Term and affirmed by the Appellate Division, but the Court of Appeals by a divided court reversed the judgment of the lower courts and ordered a new trial. The ground is clearly stated, however, by Haight, J., in the opinion, as being based on the fact that the ceremony had not been consummated by cohabitation. The court says: " Ordinarily a con-tract which is prohibited by statute is a void contract and unenforceable. But marriage contracts have always been considered as involving questions of public policy, and the interests of others than those of the contracting parties, and should, therefore, be con-strued in accordance with such policy. The legis-latures, therefore, of most of our states have deemed it unwise to permit marriage contracts to be entered into between minors whose judgment and discretion were still immature. *And yet where the contract has been made which has been followed by cohabitation, it has not been considered good policy to declare such*

*marriage void, for it might be followed by the birth of children whose legitimacy might be affected thereby.''* And again it is said: " We thus have the question presented in this case as to whether a marriage ceremony performed by a minister, in violation of the statute, between parties, one of whom is under the age of legal consent, *which has not been consummated by cohabitation,* is valid and forever binding upon the parties and is beyond the power of the courts of any state to annul or grant the parties relief.''

In *Mitchell* v. *Mitchell,* 63 Misc. Rep. 580, Wheeler, J., citing strong authority, says: " It is a fundamental principle of law that each state has the right to determine the marital status of its own citizens.''

The marriage would have been valid if contracted here; neither party could then have maintained an action for its annulment. There is no evidence that the parties went outside the state to evade the laws of this state. What their purpose was in having the ceremony performed in Pennsylvania does not appear, but it is clear that their intent was to return immediately to this state where they were residents and here establish their matrimonial domicile. Shall we assume that they went to another state to contract a voidable marriage? Is it to be presumed that the parties went into Pennsylvania to go through a meaningless ceremony and enter into a contract to be of no legal effect, and then returned to New York to live together in an illicit and illegal relation terminable at will? It seems to me, rather, that knowing the law of this state they intended to enter into a contract which would be legal where it would be consummated, and the solemn ceremony had the significance to them of establishing a marriage relation which would be valid in this state where they were citizens. It was here that their

status was established by that ceremony and by that contract, and it would be contrary to both legal and moral principle to hold otherwise than that the status so created and maintained for months is valid and binding on both parties. To hold that one party could now, as a matter of caprice, dissolve the marriage relation because he was not of the legal age to obtain a license to marry in a foreign state, would be to hold that by the exercise of discretion in the selection of the place to have the ceremony performed, it is not only possible but very easy under our laws for those legally entitled to marry, to enter into a " trial marriage " or to establish a relation of legalized concubinage for an indefinite period. The authority and sanction of the courts should not be given to a doctrine so abhorrent to the well-recognized sanctity of the marriage status. There is something more important in such a question than the mere desire of one or both of the parties; it is the principle in which society and state itself are interested that the rights, duties and obligations of the marriage relation may be fairly met and performed, and that the relation once established by contract shall be maintained in its purity and stability as an institution which is the foundation of the family and society, and without which there would be neither civilization nor progress. *Wade* v. *Kalbfleisch,* 58 N. Y. 282; *Adams* v. *Palmer,* 51 Maine, 481; *Maynard* v. *Hill,* 125 U. S. 190.

The plaintiff has resorted to the courts of this state to determine his rights, and I shall hold that under the laws of this state he has contracted a valid marriage.

There is still another reason why, it seems to me, the plaintiff should be denied relief, to wit, he is seeking to take advantage of his own wrong.

The question as to whether courts sitting in matrimonial cases may apply equitable principles in giving

relief, is not entirely settled in this state. The remedies given to those seeking relief in matrimonial cases in England came originally either by the exercise of legislative power in acts of parliament where divorces were granted, or from the ecclesiastical courts which were able to give a somewhat limited remedy in certain matrimonial cases. Neither the common-law courts nor the high Court of Chancery assumed or exercised any jurisdiction over matrimonial cases. The ecclesiastical courts were never adopted into the judicial system of this country. The remedies in all matrimonial cases in this state, since the adoption of the Constitution, have been regulated by statute, which conferred power on the courts to grant relief to aggrieved persons in carefully limited cases, and the remedies given have been in general only those provided by statute. But in administering the law, the courts have sometimes applied equitable principles and followed the rules and maxims of equity in dealing with the parties and the situation. The chancellor early assumed equity jurisdiction to annul a marriage on the ground of lunacy or for fraud of one of the parties, before any statute granted any such jurisdiction to the Court of Chancery. *Wightman* v. *Wightman,* 4 Johns. Ch. 343; *Ferlat* v. *Gojon,* 1 Hopk. Ch. 541.

In passing on the question of allowance of alimony and costs to the defendant in an annulment action, Rapallo, J., says in *Griffin* v. *Griffin,* 47 N. Y. 134, 137: " Yet it has been the constant practice of the Court of Chancery, both before and since the Revised Statutes, to make equitable provision for all these matters; and in so doing, it has been guided by the decisions of the ecclesiastical courts of England in similar cases.

" This has not been done upon the theory that the Court of Chancery of this State was vested with jurisdiction of the ecclesiastical courts of England in mat-

rimonial cases, or that (except in special cases here-
after referred to) it ever possessed any jurisdiction in
cases of divorce other than that which was conferred
by our own statutes; but upon the ground of the general
equitable jurisdiction of the court, and also that when
our statutes did confer jurisdiction upon the Court
of Chancery, in those actions for divorce which by
the English law are solely cognizable in the ecclesiasti-
cal courts, the grant of that jurisdiction carried with
it by implication the incidental powers which were
indispensable to its proper exercise, and not in conflict
with our own statutory regulations on the same
subject.''

There seems to have been a long period in which the
courts were not called upon to exercise, or did not
assert, equitable jurisdiction in such cases, but in *Tay-
lor* v. *Taylor,* 63 App. Div. 231, it was held that the hus-
band was not entitled to a decree dissolving his
marriage on the ground that the plaintiff's first hus-
band was living at the time of such marriage, where it
appears that he had lived with the plaintiff for more
than ten years after obtaining knowledge that her
former husband was not dead at the time of her second
marriage. While it is not expressly so stated, it is evi-
dent that the husband was denied relief on equitable
grounds.

In *Stokes* v. *Stokes,* 128 App. Div. 838, we first find
the principle fairly and plainly stated, that in a matri-
monial action the plaintiff may be refused relief *where
he does not come into court with clean hands.* The
facts, in brief, were that the defendant had remarried
after her husband had absented himself for more than
five years, and she claimed she did not know he was
living and contracted the second marriage in good
faith. Her husband having discovered that her former
husband was living, promised to defend the second

marriage so long as the wife faithfully discharged her duties and obligations, which she did, and they continued for two years to sustain the relation of husband and wife with knowledge of the facts. He then brought the action to annul the marriage and was denied relief. The decision was by a divided court and on appeal the judgment in favor of the defendant was reversed by the Court of Appeals on the ground that the defendant should have known at the time of the second marriage that her husband was living and undivorced, if she had conducted an inquiry in good faith with the diligence required by the importance of the subject. The Court of Appeals did not disapprove the principle laid down in the lower court to which I have adverted, but disposed of it in this manner: " While it may well be that there are extreme cases where the position of the party seeking relief of the kind sought here is so inequitable that a court of equity will refuse to interfere, no such defense was pleaded or sufficiently proved in the case before us." *Stokes* v. *Stokes,* 198 N. Y. 301, 312.

In 1909, shortly after the *Stokes* case had been decided by the Appellate Division of the second department, the Appellate Division in the first department decided a somewhat similar case, *Berry* v. *Berry,* 130 App. Div. 53. The action was brought by the husband to annul a marriage upon the ground that at the time of the marriage he had a legal wife living, to whom he was previously married, and who was still living. The plaintiff having contracted a marriage in England in 1885 and lived with his wife in that country for about a year, came to New York, promising to send for her at some future time. The wife continued to live at Leeds, Eng., until 1907, and her whereabouts were well known to the plaintiff, or could have been easily ascertained. In 1897 the plaintiff received a letter speaking of his wife's death, and shortly after receiv-

ing this letter, without apparently making any effort to verify the truth of the statement regarding his wife's death, the plaintiff and defendant were married in the city of New York and lived and cohabited together for over nine years. He then sought to have his marriage annulled on the ground stated. Relief was refused at Special Term, and the judgment was affirmed by a divided court in the Appellate Division. In the prevailing opinion of Clarke, J., it is said: "Does the court, in actions to annul a marriage, sit as a court of equity, and is the equitable maxim that a plaintiff must come into court with clean hands to be applied? * * * The Supreme Court is vested with the powers of the Court of Chancery. I take it, therefore, that the doctrine is still true, that while its entire jurisdiction in matrimonial causes is conferred and regulated by statute, yet in the exercise of that jurisdiction, unless controlled by positive enactment, it proceeds as a court of equity. Indeed, the very provisions in the sections of the Code of Civil Procedure relating to divorce and separation, permitting counterclaims and denying relief to a guilty plaintiff, no matter how guilty the defendant may prove to have been, is statutory proof of the existence in that court in such actions of the maxim, ' the plaintiff must come into court with clean hands.' " *Berry* v. *Berry,* 130 App. Div. 57, 59.

The question was again before the Appellate Division of the first department in *Brown* v. *Brown,* 153 App. Div. 645. This was after the Court of Appeals had made the decision in *Stokes* v. *Stokes.* In the *Brown* case it was held that although a woman married a man with the knowledge that he was already bound by a valid and subsisting marriage, she is entitled, nevertheless, to a decree annulling the marriage for it is absolutely void, and that the court of its own motion could not deny such relief upon equitable

principles. In the *Brown* case no answer was put in and no equitable defense was pleaded. Clarke, J., says at page 650: " While the equitable principle, made the basis of our decision in *Berry* v. *Berry (supra)*, seems to be recognized in the opinion of Judge Vann in the *Stokes Case (supra)*, yet, although the Appellate Division in the Second Department deemed the facts required it, he declined to apply it to the case then before the court. In view of that decision of the court of last resort, we feel bound to limit the *Berry* case to the exact facts there before the court, to wit, where a guilty party sought the aid of the court to relieve himself of the consequences of his own wrongdoing.''

Such is the status of the law in this state at present relative to the application of equitable principles in matrimonial actions. The doctrine is recognized in other states. *Rooney* v. *Rooney,* 54 N. J. Eq. 231; *Donnelly* v. *Strong,* 175 Mass. 157; 26 Cyc. 911.

In the case at bar the plaintiff induced the defendant to enter into the marriage contract with him by making a false affidavit as to his age, to obtain a license, and by representing to her that he had a written consent to the marriage by his father, but which it was not necessary to use. He now seeks to take advantage of his own wrongdoing, and asks aid of the court to relieve him from the contract which he regards burdensome or inconvenient. The defendant has answered and sufficient facts have been set up in the answer and established upon the trial so that we may say the equitable question is fairly presented to the court. Here, then, it seems we may find one of those " extreme cases '' referred to by Judge Vann in *Stokes* v. *Stokes, supra,* " where the position of the party seeking relief of the kind sought here is so inequitable that a court of equity will refuse to interfere.''

I, therefore, conclude that the plaintiff has not come

Supreme Court, December, 1918.    [Vol. 105.

into court in good conscience and with clean hands, and that his application for relief should be denied upon that ground.

The defendant may have judgment upon the findings made, dismissing the complaint on the merits, with costs.

Ordered accordingly.