Louis Wirth, Plaintiff, v. Coreen Wirth, Defendant.

Supreme Court, Erie County, November 19, 1940.

*Francis DiBartolo*, for the plaintiff.

*George E. Phillies* and *Leonard J. Brizdle*, for the defendant.

Thomas H. Noonan, Official Referee. This is an action to annul a marriage under the provisions of section 1139 of the Civil Practice Act, the pertinent parts of which are as follows:

" § 1139. Action to annul marriage on the ground of force, duress or fraud. An action to annul a marriage on the ground that the consent of one of the parties thereto was obtained by force, duress or fraud may be maintained at any time by the party whose consent was so obtained. * * * But a marriage shall not be annulled on the ground of force or duress if it appears that, at any time before the commencement of the action, the parties thereto voluntarily cohabited as husband and wife; or on the ground of fraud, if it appears that, at any time before the commencement thereof, the parties voluntarily cohabited as husband and wife, with a full knowledge of the facts constituting the fraud."

The action was started July 13, 1937, and when it came before Justice John V. Maloney he referred it to me, an official referee of the Supreme Court, to hear and determine, and testimony was taken on May 6, 7 and 27, June 11, July 2 and 22, and September 25, 1940, and briefs have been submitted by counsel.

In May, 1935, plaintiff and his brother George were living together at Eggertsville, N. Y., and the defendant, on May 4, 1935, in answer to a " help wanted " advertisement, went to the home of the plaintiff and was hired as a maid. She gave her name as Miss Nordman. On May 9 or 10, 1935, Beatrice Stanfa, a daughter of the defendant,

came to the house.  Early in July, 1935, the parties began to have sexual relations which continued until the plaintiff left the defendant on June 7, 1937.

The defendant soon became pregnant, and a son was born on April 1, 1936, and was baptized in St. Benedict's Roman Catholic Church at Eggertsville, N. Y., on May 2, 1936, and the names of the parents were stated to be Louis G. Wirth and Coreen Normand. When this action was first started the plaintiff denied that he was the father of said child, Gordon, but later admitted that he was.

Before going to the home of the plaintiff, the defendant had been employed by Joseph T. Stanfa, of Williamsville, N. Y., who had been separated from his wife for several years.  He told the defendant that he had started, or intended to start, an action under section 7-a of the Domestic Relations Law to dissolve the marriage.

Before the marriage the plaintiff had a detective agency investigate the past life of the defendant.  From its reports he was fully informed of defendant's past relations with Stanfa; that Beatrice Stanfa was born May 21, 1930, and was baptized in SS. Peter and Paul Roman Catholic Church at Williamsville, N. Y., on May 1, 1932; that in the certificate of baptism the defendant was called Catherine Neides; that in the birth certificate she was called Catherine Stanfa; that James Thorn is named as father of the child and that Beatrice was called Rose Marie Thorn.

It is conclusively shown by all the evidence that the plaintiff was fully informed about the Stanfa affair before he married the defendant, but in addition to the foregoing information, the report also showed that Beatrice Stanfa had been in St. Vincent's Roman Catholic Orphan Asylum after the death of her father, Joseph T. Stanfa, who left no estate; that there was an unpaid bill for her board there of $150 to $160; that the defendant was Polish; that her real name was Niedesinski and not Normand or Nordman; that the defendant's mother had been confined in a State hopital, and some other facts.  With all this information he married the defendant, and the defendant testified that she told all her past life history to the plaintiff before the marriage.

The parties were married at Lancaster, N. Y., on February 14, 1936, by Julius Volker, a justice of the peace, but before the ceremony was performed he had her make an affidavit contradicting some of the information he had received in the reports of the detective agency.

After the marriage the parties continued to live together.  In January, 1937, the plaintiff again employed the same detective agency to check up the past life of the defendant, and in the five reports submitted the only really new information was that the defendant had been sent to the Hudson Training School for Girls,

at Hudson, N. Y., had been paroled, and returned for a violation of parole.

Statutory restrictions prevented me from getting the real facts in the case, but the defendant testified that she told the plaintiff about this affair. The plaintiff claimed she did not, so it is one against the other, with the burden of proof upon the plaintiff.

After receiving these reports the plaintiff lived with the defendant over four months. They have not lived together since.

Upon all the evidence before me, two questions of law are presented:

1. Is the plaintiff, after all the information he had about the past life of the defendant before the marriage, entitled to a judgment annulling the marriage on the ground of fraud, or, in other words, can he knowingly take damaged goods and afterwards repudiate the contract on the ground of fraud?

2. After living over four months with the defendant after he had the reports of January, 1937, is he estopped from raising the question of fraud as to facts in such reports, or did he, by such conduct, ratify his marriage to the defendant?

The answer to the first question is No, because the plaintiff had knowledge of all the material facts, either from the defendant or from the reports of the detective agency before he married the defendant, and thereafter lived with the defendant as his wife over one year and four months. (Civ. Prac. Act, § 1139; 26 C. J. § 55, p. 1134; 9 Carmody's N. Y. Practice, pp. 43, 52; *McGill* v. *McGill*, 179 App. Div. 343; affd., 226 N. Y. 673; *Rychlovsky* v. *Rychlovsky*, 252 App. Div. 893; *Bays* v. *Bays*, 105 Misc. 492.)

Neither can the plaintiff now complain of the conduct of the defendant with Stanfa because his own testimony as well as the reports of the detective agency shows that he was fully informed as to this affair before the marriage, and in *Glean* v. *Glean* (70 App. Div. 576) the court said: " The general rule is, that marriage covers with oblivion antenuptial incontinence and lapses from virtue."

The answer to the second question is Yes, because the plaintiff lived with the defendant as his wife for over four months after he received the January, 1937, report of the detective agency and is estopped from claiming any fraud on the part of the defendant because by living with her after knowing the contents of the reports he ratified the marriage. (9 Carmody's N. Y. Practice, p. 52; *McGill* v. *McGill, supra.*)

Upon the facts and the law the plaintiff has failed to establish his cause of action, and his complaint is dismissed on the merits, but without costs as he has paid the counsel fees as directed by the court.

Submit findings and judgment in accordance with this decision.